NO. 07-11-0384-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 3, 2012
_____

EX PARTE

ERIC DEAN RODRIGUEZ

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY
NO. 5923; HONORABLE KELLY MOORE, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Eric Dean Rodriguez, appeals the trial court's order denying his pretrial application for writ of habeas corpus contending he is being subjected to double jeopardy after his first trial ended in a *sua sponte* order of mistrial. The State contends the trial court did not err because Appellant failed to preserve error by failing to timely object and is, therefore, deemed to have consented to the mistrial. The State also contends that the interests of justice made a mistrial manifestly necessary. Because we find the trial court's original decision to declare a mistrial was dictated by manifest necessity, we affirm the trial court's order denying Appellant's application for writ of habeas corpus.

## BACKGROUND FACTS

Appellant was charged by indictment with the first degree felony offense of aggravated sexual assault of a child.[1]  The indictment alleged that on or about May 17, 2009, Appellant did intentionally or knowingly cause the penetration of the female sexual organ of [victim], a child who was then and there younger than 14 years of age and not the spouse of Appellant.  Trial commenced on July 13, 2010.  After voir dire, the empanelment of the petit jury, the reading of the indictment, Appellant's entry of a plea of "not guilty," the swearing in of witnesses for both the State and the defense, opening statements by the prosecution and the defense (both making reference to photographic evidence obtained by the sexual assault nurse examiner (the SANE nurse)) and preliminary testimony from the State's first witness, Ann Atterback, the SANE nurse, an issue arose as to the admission of seven photographs.  Prior to that issue coming to the attention of the court, Ms. Atterback had already testified that as a part of any sexual assault examination she makes a "detailed examination" of the victim's genitalia, including "colposcopic photographs with magnification" of that area, "whether we find signs of trauma or we don't . . . ."  She went on to testify that in this case she had examined the eleven-year-old complainant and found swelling and deformity in the area of her labium minus, which she believed to be indicative of trauma, and which she was able to "capture" in a series of photographs.  When the State asked that those photographs be admitted, defense counsel requested and received permission to voir dire the witness.  During the course of questioning of Ms. Atterback, it became apparent that the prosecution had been aware of the photographs for at least four months but,

_____

[1]*See* Tex. Penal Code Ann. § 22.021 (West Supp. 2011).

2

notwithstanding a discovery order requiring the State to disclose those photographs, the prosecution had failed to disclose their existence until a week before trial. During this colloquy, it was also established that defense counsel had not seen the photographs until the morning of trial.

The trial court briefly recessed the proceedings in order to allow defense counsel an opportunity to look at the photographs and "make whatever argument or whatever request for relief" she might request. After the recess, defense counsel asked that the photographs be refused admission, or that she be granted a continuance sufficient in time to allow her to retain an expert to assist her in the evaluation of those photographs. When questioned by the trial court as to how long a continuance was necessary, defense counsel equivocated, indicating that although she had been retained, her fee had not been paid in full, and she would have to request the court for funds to retain such an expert. The trial court then asked the prosecution why the photographs had not been turned over sooner, to which the prosecutor replied, "I don't know, your Honor. I can't answer that question." The court then *sua sponte* declared a mistrial stating:

> [w]ell, it just absolutely baffles the Court that in a First Degree Felony where a defendant is - State is seeking to send him to prison for up to life in prison that the State would not furnish this evidence after having had it for four months until one week before the trial. And there's nothing I can do about it at this point.
>
> The Court is going to grant a mistrial in this case. I can't grant a continuance, because the Defense is going to have a right to hire an expert to examine the evidence, and I don't know how - I couldn't keep a jury on the hook that long. So based upon the inability - or the State's failure to timely deliver the evidence or even notify Counsel of its existence for at least a period of four months after the State knew it had it, the Court grants a mistrial.

3

At that time, neither the prosecution nor the defense objected to the trial court's *sua sponte* order of mistrial.

On March 9, 2011, new defense counsel filed a *Special Plea of Double Jeopardy* contending that because the mistrial was not required by manifest necessity, double jeopardy barred Appellant's retrial. At a pretrial hearing on that special plea, the trial court stated:

> the reason the Court did not simply exclude the photographs was that the Court had figured out by that point that the photographs were really the only physical evidence of the alleged crime that could be actually shown to the jury and could have been -- and my thought process was that they certainly could have been beneficial to the Defense. The Defense Attorney said that had she known of the existence of the photographs that she would have quite possibly hired an expert. And if her client didn't have the money to do that might have applied for a court-appointed expert. And my thought was that if we went through the trial without the Defense having the benefit of taking a critical look at the photographs, certainly more than a few hours worth of looking on the morning of trial, that in the event of a conviction the Court was facing a real possibility of a claim of ineffective assistance. So right or wrong, that was the reasoning that the Court didn't just simply exclude the photographs.

The trial court then denied Appellant's special plea of double jeopardy.

Thereafter, on March 24, 2011, counsel filed a *Pre-Trial Application for Writ of Habeas Corpus Seeking Relief from Double Jeopardy* on the same basis. The trial court denied the application for writ of habeas corpus on April 4, 2011. Following issuance of *Ex parte Garza*[2] by the Texas Court of Criminal Appeals on May 4, 2011, defense counsel filed Appellant's *Motion to Reconsider the Court's Order Denying the*

---

[2]*Ex parte Garza*, 337 S.W.3d 903 (Tex.Crim.App. 2011).

*Defendant's Pre-Trial Application for Writ of Habeas Corpus*[3] on August 24, 2011.  The trial court denied that motion on August 27, 2011, from which Appellant gave timely notice of appeal.

By a single issue, Appellant contends the trial court's *sua sponte* decision to declare a mistrial invokes double jeopardy implications because the trial court failed to consider other available less drastic options, such as exclusion of the photographs.  The State contends Appellant's issue should be overruled because: (1) he failed to preserve the issue for appeal by failing to object; (2) he consented to the mistrial by failing to object; or (3) the declaration of mistrial was manifestly necessary.

### SUBJECT MATTER JURISDICTION

In the case of *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App. 1982), the Texas Court of Criminal Appeals established that a pretrial writ of habeas corpus was an appropriate procedure to review an individual's claim of double jeopardy.  The denial of a pretrial writ of habeas corpus based upon a claim of double jeopardy is an appealable order.  *See id.* at 555.  *See also* Tex. R. App. P. 31.1.

### STANDARD OF REVIEW

In reviewing a trial court's decision to grant or deny habeas corpus relief, we will uphold the trial court's ruling absent an abuse of discretion.  *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007).  Therefore, in determining whether

---

[3]Given the substance of Appellant's motion to reconsider, we have construed that motion as a subsequent application for writ of habeas corpus.

5

a trial court has abused its discretion, we view the evidence in the light most favorable to the trial court's ruling. *Id.* An abuse of discretion occurs when the decision of the trial court falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990). In other words, the trial court's decision must have been arbitrary, unreasonable, and made without reference to any guiding rules or principles. *Id.* In conducting our review, we afford almost total deference to the trial judge's determination of historical facts that are supported by the record, particularly when those fact findings are based on the judge's evaluation of credibility and demeanor. *Ex parte Peterson,* 117 S.W.3d at 819. If the resolution of the ultimate questions turn on an application of legal standards, we review that determination de novo. *Id.*

However, in reviewing the trial judge's decision to grant or deny double jeopardy relief by way of habeas corpus, the standard of review is not static and it must vary depending on the cause of the mistrial. *See Arizona v. Washington,* 434 U.S. 497, 507-508, 98 S.Ct. 824, 54 L.Ed. 2d 717 (1978); *Cherry v. Dir., State Bd. of Corr.,* 635 F.2d 414, 418-19 n.6 (5th Cir. 1981) (recognizing that the standard of review can vary from the "highest degree of respect" to the "strictest scrutiny" depending on the reason for the mistrial). At one end of the spectrum, broad deference is appropriate because the trial judge is in the best position to assess the relevant considerations. *Washington,* 434 U.S. at 513-14 (broad discretion appropriate where mistrial necessitated by a need to prevent jury-bias); *Ex parte McMillian*, No. 05-11-00642-CR, 2011 Tex.App. LEXIS 6912, at *6 (Tex.App.--Dallas Aug. 29, 2011, pet. ref'd) (broad discretion appropriate where mistrial involved potentially deadlocked jury). At the other end of the spectrum,

strict scrutiny is appropriate when the basis of the mistrial is the unavailability of critical prosecution evidence. *Washington,* 434 U.S. at 508. Therefore, part of our task is to determine the correct standard of review by identifying the cause of the mistrial. *United States v. Fisher*, 624 F.3d 713, 719 (5th Cir. 2010).

## DOUBLE JEOPARDY

A defendant may not be twice put in jeopardy for the same offense. U.S. CONSTITUTION amend. V; TEXAS CONSTITUTION art. 1, § 14; *Washington,* 434 U.S. at 503. When a jury is empaneled and sworn, jeopardy attaches. *Hill v. State*, 90 S.W.3d 308, 313 (Tex.Crim.App. 2002). When jeopardy attaches, a mistrial declared over the defendant's objection, ordinarily bars further prosecution for the same offense. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex.Crim.App. 2011). However, double jeopardy does not bar the subsequent prosecution of the same offense when the mistrial is declared either with the defendant's consent or when it arises from a manifest necessity. *Hill*, 90 S.W.3d at 313.

Furthermore, in cases involving a mistrial due to prosecutorial misconduct, a retrial is not barred by double jeopardy unless the conduct in question was committed with the intent to provoke the defense into requesting a mistrial or with the intent to avoid an acquittal. *Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007) (holding that the proper standard of review is the rule articulated by the United States Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)).

**MANIFEST NECESSITY**

In evaluating manifest necessity, a reviewing court must consider the nature of the case, its procedural posture, the cause of the mistrial, the interests of the parties, the availability of less drastic alternatives, and the ends of public justice. The classic formulation of the test for manifest necessity was penned by United States Supreme Court Justice Joseph Story in *United States v. Perez,* 22 U.S. 579, 580, 6 L.Ed. 165, 9 Wheat. 579 (1824) as follows:

> [w]e think, that in all cases of this nature, the law has invested Courts of justice with authority to discharge a jury for giving any verdict, whenever, in their opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest of caution, under urgent circumstances, and for very plain and obvious causes. . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

Manifest necessity exists only in very extraordinary and striking circumstances demonstrating a high degree of necessity that the trial come to a premature end. *Washington*, 434 U.S. at 505-06; *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex.Crim.App. 2002); *Brown v. State*, 907 S.W.2d 835, 839 (Tex.Crim.App. 1995). The circumstances must (1) render it impossible to arrive at a fair verdict before the initial tribunal, (2) render it impossible to continue the trial, or (3) involve trial error that would trigger an automatic reversal on appeal if a verdict was returned. *Ex parte Garza*, 337 S.W.3d at 909.

Manifest necessity is not a standard that can be applied mechanically or without attention to the particular problem confronting the trial court. In reviewing a trial court's determination of manifest necessity, we apply a dynamic abuse of discretion standard depending on the cause of the mistrial. *Fisher*, 624 F.3d at 719. A trial court's decision to declare a mistrial is a matter committed to the trial court's broad discretion and such a decision should be accorded great deference on appeal. *See Washington,* 434 U.S. at 509-10. A trial court abuses its discretion, however, whenever it declares a mistrial without first considering the availability of less drastic alternatives and reasonably ruling them out. *Ex parte Garza*, 337 S.W.3d at 909. The record need not contain the trial court's reasoning for declaring the mistrial so long as the manifest necessity is apparent from the record. *Id.* at 909-10.

## ANALYSIS

Appellant contends that because a manifest necessity for mistrial was lacking, his subsequent prosecution for the same offense violated the double jeopardy provisions of both State and Federal Constitutions. In deciding whether the circumstances of this case rise to the level of manifest necessity for a mistrial, we must consider the cause precipitating the trial judge's decision and the purposes served by declaring the mistrial. *See United States v. Stevens*, 177 F.3d 579, 587 (6th Cir. 1999). Here, the underlying basis of the mistrial was the prolonged delay in trial necessitated by the potential appointment of a forensic expert to assist the defense in the analysis of physical evidence and the preparation for trial. At the time the mistrial was declared, the possibility existed that a defensive expert witness could have looked at the photographs and been of assistance to the defense in cross-examination of the State's

9

expert witness. It is also possible that a defense expert could have found the photographs to be exculpatory. Furthermore, there existed the very real possibility that the process of obtaining appropriate financial assistance from the trial court, retaining a defense expert, providing the photographs for review, receiving an expert report, and subsequently reconvening the trial could take months.[4] Because this delay was necessitated by the State's failure to timely disclose this evidence, we will review the trial court's decision to declare a mistrial under a strict scrutiny standard.

Applying that standard, the trial judge was faced with a situation where the defense had been denied access to potentially critical evidence. Faced with those facts, the only practical options available to the trial court were: (1) continue the proceedings for an indefinite period of time in order to allow the defense to examine the evidence, (2) exclude the evidence, or (3) declare a mistrial. Therefore, to determine whether the trial court abused its discretion in declaring a mistrial, we must determine whether it could have reasonably ruled out the availability of the less drastic alternatives of continuance and exclusion of the evidence.

CONTINUANCE OF PROCEEDINGS

Faced with the difficulty involved in determining Appellant's indigence and entitlement to a court-appointed expert, coupled with the uncertain delay in finding, retaining, and consulting with that expert, it is a virtual certainty that any delay involved in this case would be protracted. In certain circumstances, a protracted continuance is

---

[4]While there was no direct evidence concerning the length of the expected delay, a trial judge is entitled to assess the situation through the lens of his own experience and expertise and draw reasonable inferences from facts in evidence. *See Ornelas v. United States*, 517 U.S. 690, 699 134 L.Ed.2d 911, 116 S.Ct. 1657 (1996) (discussing the trial judge's view of the facts of a particular case as providing a context for drawing "inferences that deserve deference").

not a viable alternative to a mistrial.  *Ex parte Garza,* 337 S.W.3d at 916.  *See also United States v. Williams*, 717 F.2d 473, 475 (9th Cir. 1983) (holding that manifest necessity existed for a mistrial because counsel needed a lengthy delay to prepare and a "protracted continuance was impractical given the high probability that many of the jurors would be unavailable on the new trial date.")  Merely rescheduling this case for trial from a previous setting took over four months.  Given these circumstances, a decision by the trial judge that a continuance was not a reasonable alternative to mistrial was not a decision outside the zone of reasonable disagreement, and would not have been an abuse of discretion.

EXCLUSION OF EVIDENCE

While exclusion of the photographs is the option Appellant seems to prefer now, at the time, the trial court did not know whether the photographs could have potentially benefitted Appellant.  Defense counsel had already raised the possibility that an expert could assist him in explaining the trauma allegedly observed by Ms. Atterback, regardless of whether the photographs themselves were admitted.  Furthermore, the trial court was faced with a situation where the jury had already been told not only of the existence of these photographs, but of the possibility that they would be able to see for themselves the trauma, or lack thereof, depicted in those photographs.  It is difficult, if not impossible, for a trial judge in those circumstances to have been able to accurately anticipate what significance the jury would have attached to their unexplained unavailability.  Under those circumstances, not only did the trial judge have the authority to *sua sponte* declare a mistrial to prevent an injustice, he had an obligation to meaningfully consider the manifest necessity of doing so.

11

When, as here, a trial judge is faced with the equally undesirable alternatives of excluding the photographs and thereby creating a potential ineffective assistance of counsel claim or continuing the proceedings for an indeterminate but clearly lengthy period of time, we cannot say the trial judge's decision (that exclusion of the photographs was not a reasonable alternative to mistrial) was a decision outside the zone of reasonable disagreement. *See Armstrong v. State*, No. C14-91-00822-CR, 1992 Tex. App. LEXIS 2878, at *6 (Tex.App.--Houston [14th Dist.] Nov. 12, 1992, pet. refused) (finding retrial not barred by double jeopardy and upholding mistrial for manifest necessity when faced with a continuance of an indeterminate but clearly lengthy period of time).

DECLARATION OF MISTRIAL

Although the trial judge's decision to declare a mistrial in this case might have been improvidently quick, we cannot conclude on this record that the trial judge acted unreasonably in declaring a mistrial or that he did not explore and meaningfully consider the possibility of less drastic alternatives and reasonably rule them out before declaring the mistrial. Accordingly, we find the trial judge did not abuse his discretion in determining that manifest necessity barred application of double jeopardy to the facts of this case. Appellant's issue is overruled.

The trial court's order denying Appellant's application for a writ of habeas corpus is affirmed.

Patrick A. Pirtle
Justice

Publish.

12