**Opinion issued November 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01081-CR

———————————

## EX PARTE JOSEPH MONTANO

———————————

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1408110**

———————————

## O P I N I O N

The State charged appellant, Joseph Montano, with the second-degree felony

offense of theft from a nonprofit organization of property valued between $20,000

and $100,000.[1]   After a State witness incriminated himself during cross examination, the trial court declared a mistrial.  The State indicated its intent to retry appellant, and appellant applied for a writ of habeas corpus, arguing that double jeopardy barred any retrial of the offense.  The trial court denied habeas corpus relief.  In his sole issue on appeal, appellant contends that the trial court erred in denying habeas corpus relief on double jeopardy grounds.

We affirm.

## Background

The State charged appellant with aggregate theft from a nonprofit organization.  The State alleged that appellant, an employee of Memorial Hermann Hospital, created fraudulent invoices and submitted them to Memorial Hermann for payment.  Appellant then allegedly cashed the checks issued by Memorial Hermann at local convenience stores.

One of the State's witnesses at trial was Omar Faraz.  On the third day of trial, Faraz testified that he worked at the convenience store, owned by his father, where Montano allegedly cashed some of the checks from Memorial Hermann.  Faraz testified on cross-examination that appellant would sometimes give him

---

[1]   *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2013) (providing elements of offense of theft); *id.* § 31.03(e)(5) (providing that theft of property valued between $20,000 and $100,000 is third-degree felony); *id.* § 31.03(f)(3) (providing that offense is increased to next higher category of offense if owner of appropriated property was nonprofit organization).

checks to cash that had not been endorsed. Faraz testified that, when this occurred, he would endorse the checks himself before cashing them. After Faraz testified to these actions, the trial court stopped the cross-examination and, outside the presence of the jury, called the public defender's office to appoint counsel for Faraz. Both appellant and the State agree that several discussions between the parties and the trial court occurred off the record. After one of these discussions, Faraz's appointed counsel informed the trial court that Faraz would be invoking his Fifth Amendment right. Following this, the trial court stated on the record:

| The Court: | I will declare a mistrial. This will go back on the trial docket. We will give you another date to try the case, and then we can represent the evidence however you guys need to present it to prove it up. Because like I said, to me, it was pretty clean until we got there. It really was. |
| | I believe he's got a right to cross-examine, and I believe the way this happened is by him getting out this direct testimony, and now you can't do a cross. He's denied a cross. You've got a direct out there, but there's no cross. That's the problem. |
| | So, we will start—we are going to start over. Let me do this. You guys will come back tomorrow morning and we will discuss how we are going to proceed. And I'll give you as much time as you need to, again, reevaluate your presentation and what you want to do, knowing that he doesn't want to testify, have the Fifth. I guess anybody—I don't know if the—it's his father, right, that owns the business? |

3

| | |
|---|---|
| [Defense counsel]: | That's what he stated, Judge. |
| The Court: | I'm sorry? |
| [Defense counsel]: | That's what he stated. |
| The Court: | I don't know if his father did the same thing. . . . |

The trial court then signed a mistrial order which stated: "As a result of conduct occurring during trial, the court grants the motion for mistrial." The trial court set the case on the docket for a later date.

Appellant applied for a writ of habeas corpus, contending that retrial violated double jeopardy because he did not consent to the mistrial and there was no manifest necessity for the mistrial. At the hearing on appellant's habeas corpus application, appellant maintained that he did not consent to the mistrial because, during an off-the-record conversation, he noted that he wanted to continue to cross-examine Faraz. Appellant also stated that the trial court did not ask the parties on the record for input before declaring a mistrial. Appellant argued that manifest necessity for the mistrial did not exist because Faraz should not have been able to invoke his Fifth Amendment right against self-incrimination as he waived this right when he freely answered questions about his actions. Appellant also contended no manifest necessity existed because the trial court did not consider less drastic alternatives to a mistrial.

4

At the habeas hearing, the State provided further information about what had occurred off the record at trial. According to the State, after the trial court called the public defender's office, the court, off the record, informed the parties that it was considering granting a mistrial if Faraz later invoked his Fifth Amendment right against self-incrimination. The State argued that there was ample opportunity at this point to object or to argue against mistrial and that it was appellant's choice not to present any argument or make any objection at that time. The State noted, "At no point in time did the Court cut [appellant] off or not allow him to make any kind of argument against the mistrial." The State also argued that appellant's objection to the mistrial was not timely because appellant did not object to the mistrial until he applied for habeas corpus relief on November 11, 2013, two months after the trial court declared a mistrial.

The trial court subsequently denied habeas corpus relief. Appellant timely filed a notice of appeal. *See* Tex. R. App. P. 26.2(a)(1), 31.1.

## Double Jeopardy

In his sole issue, appellant contends that the trial court erred in denying habeas corpus relief on double jeopardy grounds because (1) he did not consent to the mistrial and (2) manifest necessity for the mistrial did not exist.

5

### A. Standard of Review

Generally, an appellate court reviews a trial court's decision to grant or deny habeas corpus relief for an abuse of discretion. *See Sandifer v. State*, 233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Ex parte Ayers*, 921 S.W.2d 438, 440 (Tex. App.—Houston [1st Dist.] 1996, no pet.)). In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the evidence in the light most favorable to the trial court's ruling. *See Ex parte Masonheimer*, 220 S.W.3d 494, 507 (Tex. Crim. App. 2007).

We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because issues of consent are necessarily fact intensive, a trial court's finding must be accepted on appeal unless it is clearly erroneous. *See Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). When there are no written findings explaining the factual basis for the trial court's ruling, we imply findings of fact that support the ruling so long as the evidence supports those implied findings. *See id.*

### B. Consent to Mistrial

The United States and Texas Constitutions both prohibit a defendant from twice being put in jeopardy for the same offense. U.S. CONST. amend. V; TEX.

CONST. art. I, § 14.  Jeopardy attaches when a jury is impanelled and sworn. *Husain v. State*, 161 S.W.3d 642, 645 (Tex. App.—San Antonio 2005, pet. ref'd) (citing *Ex parte Little*, 887 S.W.2d 62, 64 (Tex. Crim. App. 1994)); *Ex parte Perusquia*, 336 S.W.3d 270, 275 (Tex. App.—San Antonio 2010, pet ref'd).  Once jeopardy attaches, the defendant possesses the right to have his guilt or innocence determined by the first trier of fact.  *Torres v. State*, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981); *Ellis v. State*, 99 S.W.3d 783, 786 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).  Consequently, as a general rule, if, after jeopardy attaches, the jury is discharged without having reached a verdict, double jeopardy will bar retrial.  *Brown v. State*, 907 S.W.3d 835, 839 (Tex. Crim. App. 1995); *Ex parte Rodriguez*, 366 S.W.3d 291, 296 (Tex. App.—Amarillo 2012, pet. ref'd).  An exception to this rule exists if the defendant consents to a retrial, or if some form of manifest necessity mandates a retrial.  *Torres*, 614 S.W.2d at 441; *Ex parte Rodriguez*, 366 S.W.3d at 296; *see Ex parte Perusquia*, 336 S.W.3d at 275.

Our first inquiry is whether appellant consented to a mistrial.  Consent in this context need not be express; consent "may be implied from the totality of circumstances attendant to a declaration of mistrial."  *Torres*, 614 S.W.2d at 441 (citing *United States v. Gori*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526 (1961)); *Garner v. State*, 858 S.W.2d 656, 658 (Tex. App.—Fort Worth 1993, pet. ref'd).  Before a defendant's failure to object constitutes implied consent to a mistrial,

7

however, a defendant must be given an adequate opportunity to object to the court's action. *Torres*, 614 S.W.2d at 441–42; *Garner*, 858 S.W.2d at 659. A defendant who does not object to a declaration of mistrial, despite an adequate opportunity to do so, has impliedly consented to the mistrial. *Torres*, 614 S.W.2d at 441; *Ledesma v. State*, 993 S.W.2d 361, 365 (Tex. App.—Fort Worth 1999, pet ref'd).

Appellant contends that he did not consent to the trial court's declaration of a mistrial. He admits that he never expressly objected to the trial court's declaration of a mistrial, but he argues this was because he did not have an opportunity to do so. Appellant argues that he never had an opportunity to object because the trial court's first statement on the record after dismissing the jury for the day was "I will declare a mistrial." Appellant relies on the Dallas Court of Appeals' opinion in *Harrison v. State* to support the proposition that he did not consent to the mistrial. 772 S.W.2d 556, 558 (Tex. App.—Dallas 1989), *rev'd on other grounds*, 788 S.W.2d 18 (Tex. Crim. App. 1990).

In *Harrison*, the trial court disqualified the defendant's counsel, in response to a motion by the State, on the ground that counsel was a potential fact witness. *Id.* at 557. The court then announced that it intended to declare a mistrial. *Id.* The parties and the trial court held an off-the-record discussion, during which the prosecutor stated that he was within his rights to call Harrison's attorney as a

witness. *Id.* at 557–58. The trial court then declared a mistrial on the record. *Id.* at 558.

The Dallas Court of Appeals held that, based on the brevity of the record, it could not conclude that the appellant was given an adequate opportunity to object. *Id.* The court emphasized that the trial court declared a mistrial almost immediately after first announcing its intention, noting that the trial court did not discuss this intention to declare a mistrial with the parties or provide an opportunity for the parties to object. *Id.* The *Harrison* court concluded that, based on the totality of the circumstances, Harrison did not consent to the mistrial. *Id.*

*Harrison* is distinguishable from the present case. The sequence of events leading up to the declaration of the mistrial in *Harrison* was more condensed than that in the case before us. Given the quick nature in which the declaration of mistrial came about, Harrison had a short window of time in which to object. *See id.* at 558. Here, the events leading up to the declaration of the mistrial were more protracted.

After Faraz made a possibly self-incriminating statement on the witness stand, the trial court stopped appellant's cross-examination of Faraz and contacted the public defender's office, outside the presence of the jury, to appoint counsel for Faraz. The State argued at the habeas hearing that, during the time that Faraz was waiting for and consulting with his appointed counsel, the trial court spoke with

9

the parties off the record and informed them that it was considering granting a mistrial if Faraz subsequently invoked his Fifth Amendment right against self-incrimination. After Faraz informed the trial court that he would invoke his Fifth Amendment right, the court went on the record and declared a mistrial.

The court explained on the record its reason for granting the mistrial:

| The Court: | I will declare a mistrial. This will go back on the trial docket. We will give you another date to try the case, and then we can represent the evidence however you guys need to present it to prove it up. Because like I said, to me, it was pretty clean until we got there. It really was. |
|---|---|
| | I believe he's got a right to cross-examine, and I believe the way this happened is by him getting out this direct testimony, and now you can't do a cross. He's denied a cross. You've got a direct out there, but there's no cross. That's the problem. |
| | So, we will start—we are going to start over. Let me do this. You guys will come back tomorrow morning and we will discuss how we are going to proceed. And I'll give you as much time as you need to, again, reevaluate your presentation and what you want to do, knowing that he doesn't want to testify, have the Fifth. I guess anybody—I don't know if the—it's his father, right, that owns the business? |
| [Defense counsel]: | That's what he stated, Judge. |
| The Court: | I'm sorry? |
| [Defense counsel]: | That's what he stated. |

10

The Court:                    I don't know if his father did the same thing. . . .

The record of appellant's trial, combined with statements from both appellant and the State at the habeas hearing concerning discussions that occurred off the record, demonstrates that appellant had ample opportunity to object to the mistrial both on and off the record.

The situation here is, instead, similar to that in *Garner*. In *Garner*, the trial court declared a mistrial after the first witness had testified because the court realized that a clerical error had caused the wrong juror to be placed on the jury. 858 S.W.2d at 658. Before declaring a mistrial, the trial court held an off-the-record conference with the parties in chambers. *Id.* Following the conference, the trial court declared a mistrial on the record and explained its reasoning; neither party objected to the mistrial on the record. *Id.* The Fort Worth Court of Appeals held: "The totality of the circumstances in this case reflects that appellant in effect consented to the mistrial. Even though appellant did not object on the record, he had ample opportunity to object at both the conference in the judge's chambers and in open court on the record." *Id.* at 659. Similarly, here, appellant had opportunities to express his objection to the mistrial declaration in discussions off the record as well as in open court, where the trial court explained its reasoning for granting a mistrial. Under the totality of the circumstances, we may infer appellant's consent to the mistrial. *See Torres*, 614 S.W.2d at 441; *Ledesma*, 993

11

S.W.2d at 365; *Garner*, 858 S.W.2d at 659. We therefore conclude that the trial court did not abuse its discretion in denying appellant's request for habeas corpus relief.[2]

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).

---

[2] We further note that, in a habeas corpus proceeding, the applicant bears the burden of alleging and proving specific facts which, if true, would entitle him to relief. *See Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013). In *Garza v. State*, the Corpus Christi Court of Appeals addressed a situation in which the defendant argued that double jeopardy barred a retrial after the trial court declared a mistrial, but the defendant did not introduce a record of what happened at his prior trial. 803 S.W.2d 873, 875 (Tex. App.—Corpus Christi 1991, pet. ref'd). The court observed that defense counsel's testimony at the subsequent habeas hearing did not "indicate whether [Garza] consented or objected to the district court's declaration of mistrial." *Id.* The court further noted that Garza bore the burden of establishing his entitlement to relief in a habeas proceeding and held that he had "failed to prove that jeopardy barred his second trial." *Id.*