**Opinion issued November 17, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00815-CR

————————————

## EX PARTE MUHAMMAD SAADAN AHSHAN, Appellant

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1433456**

---

## MEMORANDUM OPINION

Appellant, Muhammad Saadan Ahshan ("Ahshan"), appeals from the trial court's denial of his pretrial application for a writ of habeas corpus based on double jeopardy, filed under Article 11.07, § 2 of the Texas Code of Criminal Procedure. After a State witness, a police officer, gave a non-responsive answer to a cross-examination question by defense counsel, the trial court granted the

defense's mistrial motion at Ahshan's first trial. Ahshan, in his sole issue, contends that double jeopardy bars the State's retrial of him, under *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S. Ct. 2083, 2091 (1982). We hold that the trial court acted within its discretion in denying the application and affirm.

## BACKGROUND

On February 1, 2012, the State alleged that Ahshan assaulted his wife, Rebecca Divers, by choking her and impeding her breathing. Ahshan was later indicted by a grand jury, in the underlying trial court cause number 1336348, for the third-degree felony offense of assault of a family member—impeding breathing. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b)(2)(B) (West Supp. 2014). The case went to a jury trial on February 18, 2014, before a visiting judge.

Before the complainant had testified, the State's third witness on the first day of trial was Houston Police Officer Dustin Crowder, who was called to testify about his investigation of Divers's assault allegation. On cross-examination, Ahshan's trial counsel asked Officer Crowder about the steps he took to investigate Divers's allegations at the scene of the incident, including whether he did anything, such as reviewing any evidence or speaking to any officers, to verify her allegations before asking that the district attorney accept charges. The following exchange occurred on cross-examination by the defense:

> Q    (By Mr. Gonzalez)  I'll reask it.  You didn't do anything
>         in the way of verifying the allegations made by her

2

before you picked up the phone and called and asked that charges be accepted, correct?

A.    No, I would say that's not correct.

Q.    Did you go to the scene?

A.    I'm sorry?

Q.    Did you review any evidence at this point?

A.    I spoke with other officers who conducted interviews.

Q.    My question is did you review any evidence at this point, 911, any other evidence?

THE COURT:    I'm going to allow him to answer the question that you asked, what did he do?

A.    I spoke with other officers.

Q    (By Mr. Gonzalez) Who?

A.    Sergeant Rodriguez, and I believe – I don't remember the name of the officer that interviewed the witness, Ms. – give me one second. Ms. – I know her first name is Kathleen.

Q.    Kathleen McPhaul?

A.    That is correct.

Q.    What was the officer that took her statement?

A.    Officer Rios.

Q.    So, you spoke to Officer Rios?

A.    Yes, sir.

Q.    He was at the police station?

A.    I may have spoken to him at the scene.

Q.    You called the DA's office from the police station, right?

A.    That's correct.

Q.    So, if he's not at the p[o]l[i]ce station, how did you talk to him?

A.    I don't recall. It may have been my supervisor that contact[ed] him and informed me.

Q.    Okay.

A.    And then I also was informed that the defendant didn't want to give a statement.

    MS. RADOM [State]:    Objection.

A.    Was I not allowed to say that?

The trial court then held a hearing outside the presence of the jury where appellant's trial attorney objected that Officer Crowder's statement had improperly

3

commented on Ahshan's invocation of his Fifth Amendment right to remain silent.[1] The defense argued that an instruction to disregard would be insufficient to cure the error because "[t]his witness has intentionally rung the bell." The defense moved for a mistrial but first requested and was granted a chance to voir dire Officer Crowder.[2]

The parties conducted a voir dire examination of Officer Crowder to determine his intent in making the non-responsive statement. After the defense questioned Officer Crowder, the following exchange occurred on cross-examination by the State:

> BY MS. RADOM:
> Q. Officer Crowder, when the defense was asking you questions, you were just responding to questions that they asked you, correct?
> A. That is correct.
> Q. And they kept asking you, well, what else happened?

---

[1] *See*, *e.g.*, *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011) ("Commenting on an accused's failure to testify violates his state and federal constitutional privileges against self-incrimination.") (citations omitted); *Perez v. State*, 187 S.W.3d 110, 112 (Tex. App.—Waco 2006, no pet.) ("A comment on a defendant's post-arrest silence violates the rights of the accused under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution.") (citations omitted).

[2] *See Perez,* 187 S.W.3d at 113 ("The harm flowing from a comment on the accused's post-arrest silence can be cured by an effective instruction to disregard.") (citations omitted). However, "[m]istrial is the appropriate remedy when . . . the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie*, 340 S.W.3d at 739 (internal quotation marks and citation omitted).

4

What else happened, correct?

A. It was my understanding that he was trying – I don't know if I can say that. It was my understanding he was trying to imply that I picked up the phone as soon as I finished the interview and tried to get charges.

Q. Absolutely. And he did that – they did that by asking you, well, what else did you do? What else did you do?

A. Yes, ma'am.

Q. What other information did you get? And you were just answering – you were just answering what else happened, correct?

A. In a typical family violence investigation, we try to get the suspect's statement, and they – in order to make it – I didn't want it to seem like I didn't try to do that.

Q. And that was one of the responses to the questions that were asked by the defense, correct?

A. Yes, ma'am.

Still away from the jury, the prosecutor requested that the trial court instruct the jury to disregard Officer Crowder's last statement. The defense opposed this request, contending that Officer Crowder's statement was too egregious for a curative instruction to remedy. Following a recess to allow the parties to research limiting instructions, the State moved, in the alternative, to have the court strike Officer Crowder's statement from the record, which the defense opposed and the court rejected. Then the trial court ruled:

THE COURT: All right. Your argument is well-taken. At this time I'm going to make a finding. I don't really think this witness did it on purpose, but I agree with the defense that the bell has been rung, and I don't know how to unring it. And I think a limiting instruction just brings more attention to it. It's not something a judge ever wants to do, but I'm going to grant the mistrial. I don't think I have a choice. And it's a good lesson. It's not something – it's something you need to take to

5

heart. You never, never, never comment on what a defendant say[s] or didn't say.

The trial court then brought the jury back in, informed the jury that the court had granted the mistrial, and discharged the jury.

On May 5, 2014, through counsel, Ahshan filed a pretrial application for a writ of habeas corpus to prevent the State from retrying him in the underlying trial court cause number 1336348. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 2 (West Supp. 2014). Ahshan contended that the State's retrial of him violated his rights against double jeopardy, citing *Kennedy*. *See Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S. Ct. 2083, 2091 (1982) (when trial court grants defendant's mistrial motion, retrial not barred by double jeopardy unless State's conduct giving rise to motion "was intended to provoke the defendant into moving for a mistrial."). Ahshan claimed that the State, through Officer Crowder's non-responsive statement to the jury that Ahshan had invoked his Fifth Amendment right to remain silent, intentionally goaded Ahshan to move for a mistrial because Officer Crowder knew that the trial was not going well for the State.

## A.     The Habeas Court's Writ Hearing

On September 22, 2014, the habeas judge, who did not preside over Ahshan's trial, held a hearing on Ahshan's habeas application. Ahshan's habeas counsel presented argument, but no witnesses. Ahshan contended that the State, via Officer Crowder's comment on Ahshan's invocation of his Fifth Amendment

6

right to remain silent, intended to provoke the defense into moving for a mistrial, under *Kennedy*. Ahshan proffered the two-volume reporter's record of the trial, which the court admitted as an exhibit, in support for his claim that the State, through Officer Crowder as its agent, intentionally provoked a mistrial. Ahshan asserted that, because Officer Crowder was an experienced police officer, he should have known not to comment on a defendant's post-arrest silence, and his response to the State's objection—"Was I not allowed to say that?"—shows it was not a simple mistake. Thus, Ahshan claimed that Officer Crowder intentionally provoked the defense's mistrial request because he knew how badly the trial was going for the State.

The State did not make any legal argument at the hearing but, in response to the habeas court's question about the order of witnesses at trial, stated that Officer Crowder was the third witness to testify and the complainant had not testified yet. According to the reporter's record of the two-day trial, after Kathleen McPhaul, the complainant's friend, and Officer Daniel Rivera, an investigating officer, testified, Officer Crowder testified at the end of the first day and on the second day before the mistrial was granted.

At the end of the writ hearing, the habeas court orally denied Ahshan's application and, on September 22, 2014, signed a court directive order denying Ahshan's application for a pretrial writ of habeas corpus invoking double jeopardy.

7

Ahshan timely filed a notice of appeal on September 26, 2014. *See* TEX. R. APP. P. 26.2(a)(1), 31.1.

**B.     The Habeas Court's Findings of Fact and Conclusions of Law**

After this Court abated this case for findings of fact and conclusions of law to support the habeas court's September 22, 2014 court directive order summarily denying Ashan's habeas application, the habeas court signed findings and conclusions on January 6, 2015. The habeas court stated that it had considered Ahshan's habeas application and the official court records, and made the following findings of fact and conclusions of law:

## I.     FINDINGS OF FACT

1. On February 18, 2014, trial commenced in the 228th criminal district court of Harris County, Texas in *Muhammad Saadan Ahshan v. State*.
2. The State's third witness in the case was HPD Officer Crowder.
3. During defense counsel's cross-examination of this witness, Officer Crowder mentioned that the applicant did not want to give a statement during the investigation of the assault case. (RR II 101).
4. The State immediately objected. (RR II 101).
5. When this statement was made, the witness was being questioned by defense counsel, not the prosecutor. (RR II 101).
6. Officer Crowder explained he was just trying to answer defense counsel's questions regarding the steps of the investigation. (RR II 106).
7. Officer Crowder's response was inadvertent and not made deliberately. (RR II 112).
8. Defense counsel moved for a mistrial. In an abundance of caution, it was granted. (RR II 112-113).

## II.     CONCLUSIONS OF LAW

1.    The prosecutor in this case did not engage in conduct intended to provoke this applicant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 675–76 (1982) (when a trial court grants a defendant's motion for mistrial, the double jeopardy clause is not violated unless the State's conduct giving rise to the motion was "intended to goad" the defendant into moving for a mistrial); *Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007) (retrial is barred by double jeopardy only if the prosecutor intentionally caused a mistrial).
2.    The retrial of the applicant's case is not barred by double jeopardy. U.S. CONST. amend[.] V.

Both Ahshan and the State filed briefs in this Court. *See* TEX. R. APP. P. 31.1. After this Court abated for the certification, the trial court certified Ahshan's right of appeal of the denial of his habeas application. *See id.* 25.2(a)(2), (d).

## DISCUSSION

In his sole issue, Ahshan contends that the trial court erred in denying habeas corpus relief on double jeopardy grounds because the State intentionally provoked the defense into moving for a mistrial in this matter, because Officer Crowder knew that the State was losing this trial and, thus, a retrial is not possible, under *Kennedy*. The State responded that the habeas court properly denied Ahshan's pretrial writ application because double jeopardy does not bar his retrial since the mistrial was not a product of prosecutorial misconduct, but rather a misstep by a police officer who was being questioned by the defense when he made the objectionable statement. In addition, even if Officer Crowder's conduct could be attributed to the prosecution, the State contends that the habeas court

9

properly denied Ahshan's habeas application because the record supports the explicit determination that Officer Crowder did not act intentionally to provoke Ahshan to move for a mistrial.

## A. Standard of Review

Generally, an appellate court reviews a trial court's decision to grant or deny habeas corpus relief for an abuse of discretion. *See Ex parte Montano*, 451 S.W.3d 874, 877 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Sandifer v. State*, 233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the evidence in the light most favorable to the trial court's ruling. *See id.* (citing *Ex parte Masonheimer*, 220 S.W.3d 494, 507 (Tex. Crim. App. 2007)).

We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based upon credibility and demeanor. *Ex parte Montano*, 451 S.W.3d at 877 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see also Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). And we afford the same amount of deference to the trial judge's rulings on applications of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Sandifer*, 233 S.W.3d at 2 (citing *Guzman*, 955 S.W.2d at 89). If the resolution of those ultimate questions turns on an application of legal

10

standards, however, we review the determination de novo. *Id.* (citing *Guzman*, 955 S.W.2d at 89); *see also Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007)). We will uphold the habeas court's judgment as long as it is correct under any theory of law applicable to the case. *See Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.). An appellate court reviews the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony, provided they are supported by the record. *See id.*

**B.    Applicable Double Jeopardy Law**

The United States and Texas Constitutions prohibit a defendant from twice being put in jeopardy for the same offense. U.S. CONST. amend. V; TEX. CONST. art. I, § 14. Jeopardy attaches when a jury is impaneled and sworn. *Ex parte Montano*, 451 S.W.3d at 878 (citing *Ex parte Little*, 887 S.W.2d 62, 64 (Tex. Crim. App. 1994)). Once jeopardy attaches, the defendant possesses the right to have his guilt or innocence determined by the first trier of fact. *Id.* (citing *Torres v. State*, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981)). Consequently, as a general rule, if, after jeopardy attaches, the jury is discharged without having reached a verdict, double jeopardy will bar retrial. *Id.* (citing *Brown v. State*, 907 S.W.2d 835, 839

11

(Tex. Crim. App. 1995)).

However, "[i]n *Oregon v. Kennedy*, the United States Supreme Court held that the Fifth Amendment's Double Jeopardy Clause barred retrial after a defendant successfully moved for mistrial only when it was shown that the prosecutor engaged in conduct that was 'intended to provoke the defendant into moving for a mistrial.'" *Sandifer*, 233 S.W.3d at 2 (quoting *Kennedy*, 456 U.S. at 679, 102 S.Ct. at 2091); *see*, *e.g.*, *Constancio v. State*, No. 07–14–00335–CR, 2015 WL 4179089, at *2 (Tex. App.—Amarillo July 10, 2015, no pet.) (mem. op., not designated for publication) ("Where, as here, a mistrial is declared at the request of the accused, retrial is not barred unless the error that prompted the mistrial is conduct attributable to the State which was motivated by bad faith or undertaken to harass or prejudice the accused, and was committed with the intent to provoke the mistrial.") (citations omitted). The Texas Court of Criminal Appeals has similarly held that "'the proper rule under the Texas Constitution is the rule articulated by the United States Supreme Court in *Oregon v. Kennedy*,' i.e., whether the prosecutor intended to provoke the defendant into moving for a mistrial." *Sandifer*, 233 S.W.3d at 3 (quoting *Ex parte Lewis*, 219 S.W.3d at 337); *see*, *e.g.*, *Constancio*, 2015 WL 4179089, at *2 ("Accordingly, prosecutorial misconduct does not bar a retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.") (citing *Ex parte*

*Masonheimer*, 220 S.W.3d at 508–09).

Similarly, the Texas Court of Criminal Appeals applied *Kennedy* to bar retrial in a case when the State had intentionally failed to disclose exculpatory evidence with the specific intent to avoid the possibility of an acquittal. *Sandifer*, 233 S.W.3d at 3 (citing *Ex parte Masonheimer*, 220 S.W.3d at 507). The *Masonheimer* court reasoned that, "in a case like this, a defendant suffers the same harm as when the State intentionally 'goads' or provokes the defendant into moving for a mistrial." *Id.* (citing *Ex parte Masonheimer*, 220 S.W.3d at 507).

## C.    Analysis

Here, Ahshan claims that the State, via Officer Crowder as its agent, intentionally goaded his trial counsel into moving for a mistrial. However, we are required to review the evidence in the light most favorable to the trial court's ruling, as long as it is supported by the record. *See Ex parte Murillo*, 389 S.W.3d at 926. When Officer Crowder made his objectionable non-responsive statement, he was being questioned on cross-examination by the defense, not the State. Thus, the record, when viewed in favor of the habeas court's ruling, supports the finding that "Officer Crowder's response was inadvertent and not made deliberately," and, thus, cannot be attributed to intentional conduct by the prosecutor. *See Ex parte Cruz*, 350 S.W.3d 166, 169 (Tex. App.—San Antonio 2011, no pet.) (affirming denial of double-jeopardy habeas application because officer's unsolicited and

13

objectionable testimony was not attributable to State's action or inaction and record showed no intentional prosecutorial misconduct).  Instead, because the "sloppiness and negligence was on the part of the police; the proper remedy for such police actions that, in effect, denied applicant due process of law is retrial." *Ex parte Davis*, 957 S.W.2d 9, 13 (Tex. Crim. App. 1997); *see also Brashear v. State*, 985 S.W.2d 474, 477 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (affirming judgment and overruling double-jeopardy issue by finding evidence in record supported possible conclusion by trial court that, if anything, officer's conduct constituted police sloppiness, not prosecutorial misconduct).

In any event, even if Officer Crowder's actions were attributable to the State, we must defer to the habeas court's determination of historical facts supported by the record, especially when the fact findings are based upon credibility and demeanor.  *See Ex parte Montano*, 451 S.W.3d at 877.  In this case, the habeas court made a determination of historical fact that "Officer Crowder's response was inadvertent and not made deliberately," and this factual finding is supported by the record.  Specifically, the trial judge had made a credibility finding, when granting the defense's motion for a mistrial, that "I really don't think that this witness [Officer Crowder] did it on purpose, but I agree with the defense that the bell has been rung, and I don't know how to unring it."  Because the trial court's factual findings were based on credibility and demeanor, which the habeas

14

court adopted in its findings of fact, we must defer to these factual findings. *See Ex parte Montano*, 451 S.W.3d at 877.

Moreover, to the extent Ahshan further claims that the State intentionally goaded his trial counsel into moving for a mistrial because Officer Crowder, as the State's agent, knew that the trial was not going well for the State, this assertion is not supported by the record. As noted above, we are required to review the evidence in the light most favorable to the habeas court's ruling, as long as it is supported by the record. *See Ex parte Murillo*, 389 S.W.3d at 926. Here, Officer Crowder made his objectionable non-responsive statement very early in the trial when the State had only presented three witnesses, with Officer Crowder being the third, and the complainant had not yet testified. The trial court invoked "The Rule" before swearing in Officer Rivera, who apparently was not aware of what it was because the court explained to him that it meant he was not allowed to talk about the trial to anyone besides the State's attorneys, and that if he violated "The Rule," it was punishable by contempt.

Similarly, the trial court also invoked "The Rule" when swearing in Officer Crowder, who was familiar with it, and whose direct testimony began at the end of the first day and continued to the second day. On the second day, Officer Crowder testified on cross-examination that he did not know Officer Rivera, "[a]s far as talking to him," before meeting Officer Rivera in court the day before, and had not

talked to Officer Rivera about anything personal at the crime scene. While there is evidence in the record to rebut Ahshan's contention that Officer Crowder knew how the trial was going because he was likely not present during the testimony of the first two witnesses, there is no evidence to support that he knew the trial was not going well for the State. Thus, Ahshan's claim that Officer Crowder intentionally goaded Ahshan into moving for a mistrial because Crowder knew the trial was going poorly for the State is pure speculation without support. *See*, *e.g.*, *Constancio*, 2015 WL 4179089, at \*1, 3 (affirming denial of double-jeopardy habeas application after rejecting appellant's similar contention that, through "non-responsive statement elicited during Appellant's cross-examination of the arresting officer," the "State acted with intent to provoke a mistrial because the trial was not going the way the prosecutor had planned," since claim was not supported by record).

Furthermore, there is similarly no evidence in the record to suggest that the prosecutor thought the trial was going so poorly for the State such that she would have told Officer Crowder to provoke a mistrial. On the contrary, the prosecutor argued against the defense's request for a mistrial, contending that the trial court could have given the jury a limiting instruction to disregard Officer Crowder's last statement or else strike it from the record. Thus, there is no evidence suggesting that the prosecutor intentionally provoked the defense's mistrial request because

16

she implicitly believed that the trial was going well enough for the State when she argued against the mistrial. *See*, *e.g.*, *Paul v. State*, No. 01–11–00954–CR, 2012 WL 344947, at *4 (Tex. App.—Houston [1st Dist.] Feb. 2, 2012, no pet.) (mem. op., not designated for publication) (affirming denial of double-jeopardy habeas application because evidence supported finding that prosecutor did not intentionally goad defense's mistrial request, based partially on fact that "prosecutor believed the State's case was strong enough to secure a conviction; she did not want a mistrial.").

Here, the trial court, in granting the defense's mistrial motion, implicitly ruled the mistrial was not attributable to bad faith on the part of Officer Crowder when it found that the officer did not make his non-responsive statement on purpose. The trial court was in the better position to determine whether the offending conduct by Officer Crowder was intentional as well as the credibility of the officer's explanation that he was trying to respond to the defense's questioning about the thoroughness of his investigation. *See*, *e.g.*, *Constancio*, 2015 WL 4179089, at *3 (noting that "trial court was in the better position to determine whether the offending conduct evinced an intent to subvert the protections afforded by the Double Jeopardy Clause as well as the credibility of the prosecutor's explanations."). As noted above, we must defer to the habeas court's determination of historical facts supported by the record, especially when the fact

findings are based upon credibility and demeanor, as here. *See Ex parte Montano*, 451 S.W.3d at 877.

Therefore, we conclude the habeas court did not abuse its discretion in finding that Officer Crowder's response was "inadvertent and not made deliberately" and that, consequently, the prosecutor did not engage in conduct intended to provoke the defense's mistrial request. *See Ex parte Montano*, 451 S.W.3d at 877; *Ex parte Murillo*, 389 S.W.3d at 926; *Sandifer*, 233 S.W.3d at 2. We therefore conclude that the habeas court did not abuse its discretion in denying Ahshan's habeas application, and we overrule his sole issue.

## CONCLUSION

Accordingly, we affirm the order of the trial court denying Ahshan's pretrial application for a writ of habeas corpus.

## PER CURIAM

Panel consists of Justices Keyes, Massengale, and Lloyd.
Do not publish. TEX. R. APP. P. 47.2(b).