**Jason ROBINSON, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01–15–00808–CR, NO. 01–15–00809–CR**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued January 19, 2017

Rehearing Denied April 26, 2017

92. *See* Tex. R. App. P. 47.1.

Jani Maselli Wood, Assistant Public Defender, Houston, TX, for Appellant.

Kim Ogg, District Attorney–Harris County, Houston, TX, Jessica Akins, Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices Keyes, Higley, and Lloyd.

## OPINION

Evelyn V. Keyes, Justice

A jury convicted appellant, Jason Robinson, of the first-degree felony offenses of aggravated kidnapping and aggravated sexual assault.[1] After appellant pleaded true to the allegations in an enhancement

---

1. *See* TEX. PENAL CODE ANN. § 20.04 (West 2011) (aggravated kidnapping); *id.* § 22.021 (West Supp. 2016) (aggravated sexual assault).

paragraph, the trial court assessed his punishment at forty-five years' confinement for both offenses, to run concurrently.[2] In three issues, appellant contends that (1) his trial counsel rendered ineffective assistance by failing to present mitigation evidence during the punishment phase; (2) the trial court erred by failing to hold a hearing on appellant's motion for new trial; and (3) the trial court improperly assessed court costs against appellant for both offenses.

We affirm the aggravated sexual assault conviction. We modify the judgment resulting from appellant's conviction for aggravated kidnapping and affirm as modified.

## Background

K.W., the complainant, moved to Houston in 2013 when she was seventeen years old and began engaging in prostitution in southwest Houston. A few weeks after K.W. moved to Houston, she met appellant, and shortly after she met him, he became her pimp. K.W. worked for appellant as a prostitute for a little over a month before she decided to stop working for him. According to K.W., appellant was not happy with her decision.

Several weeks later, on August 25, 2013, K.W., who had turned eighteen by this point, was in her room at a Motel 6 along the West Sam Houston Parkway in southwest Houston when she decided to contact appellant by text. K.W. and appellant agreed to meet up. A friend dropped K.W. off nearby the agreed-upon meeting place, and she walked to where appellant was waiting in his car. K.W. got in appellant's car and they started talking. She stated that appellant was not mad or angry and that he "seemed a little happy that [she]

had met back up with him." Their conversation turned to money, and appellant told K.W. that he had been having a lot of problems lately and that he needed some money. K.W. suggested that she try to earn some money for appellant that evening by engaging in prostitution.

K.W. was unsuccessful in her attempt, and when she met back up with appellant in his car in the parking lot of a nearby McDonald's, she did not have any money to give him. When appellant asked for the money, K.W. told him that she had stored the money in her underwear and that she did not want to take it out at that moment because people were walking in and out of nearby businesses. Appellant became frustrated and began arguing with K.W. and reaching into her underwear. As K.W. was about to get out of the car, appellant locked the doors and started driving away. Appellant refused to let K.W. out of the car.

Appellant drove for several minutes and eventually pulled into a parking lot and parked in a corner spot. There were no other cars in the area. Appellant became very aggressive and forced K.W. to perform oral sex on him. He pulled her hair, smacked her, and threatened her, stating, "You're my ho, and if you ever leave, I'm going to kill you." Appellant ejaculated on K.W.'s face and then gave her a rag to clean herself up. While K.W. was doing this, appellant stepped out of the car and cleaned himself off with a different rag. K.W. believed that appellant tossed the rags in the back of his car, but she could not remember if that was what actually happened.

**2.** The aggravated kidnapping offense was tried in trial court cause number 1399190, which resulted in appellate cause number 01–15–00808–CR. The aggravated sexual assault offense was tried in trial court cause number 1399192, which resulted in appellate cause number 01–15–00809–CR.

Appellant began driving again and continued talking about how K.W. did not have any money for him and continued hitting K.W. on her forehead. Appellant drove onto a private wooded road and ordered K.W. to get out of the car. When she did so, appellant threatened her with a box cutter, telling her that "if [she] tried to scream or run or make a scene, that he would cut [her] into a hundred pieces." Appellant also bent a wire coat hanger, placed it around K.W.'s neck, and used it to lead her closer to the wooded area. Appellant placed his belt around K.W.'s neck as well and forced her onto her knees. K.W. passed out.

When K.W. regained consciousness, appellant was standing over her, and he began asking her for money again. K.W. lied and told him that she had $400 in the safe of her motel room, and she would give it to him if he would take her back there. K.W. also told appellant that she had lost her room key and that she needed to get in touch with her friend, who could let her into the room so she could get her money. K.W. managed to text a friend and asked that friend to call the police.

Appellant drove K.W. back to the Motel 6. Before they went inside, appellant warned K.W. against causing a disturbance because if she did, he would "shoot the place up." Appellant had a bag with him, and K.W. believed that he had a gun in the bag. She did not see him holding a gun that night. Appellant and K.W. walked inside the lobby of the motel, and inside,

they encountered two Houston Police Department ("HPD") officers. K.W. looked at the officers and then nodded in appellant's direction. The officers separated appellant and K.W., and paramedics tended to K.W.'s injuries.[3] Appellant was highly agitated, kicking the door of a patrol car and screaming that he did not know K.W. and that he had just met her.

K.W. stated that she told the officers that appellant had forced her to perform oral sex on him. She testified that she also told the officers that appellant had vaginally raped her and that she had seen a gun in appellant's possession that night. K.W. admitted that these two statements were not truthful, but she stated that she made the statements because she was scared and she did not want to be hurt by appellant again. K.W. later told a prosecutor with the District Attorney's Office that she had not been truthful about being vaginally raped and about seeing a gun. K.W. also admitted that, before this incident, she had a previous conviction in Harris County for prostitution.

HPD Officer X. Flores and his partner, Sergeant K. Li, received a dispatch about an assault in progress concerning a black man and a white woman occurring at a Motel 6 on the West Sam Houston Parkway. Officer Flores did not see an assault occurring when he pulled up to the motel, so he and Sergeant Li went inside the lobby. They almost instantly saw a black man—later identified as appellant—walk-

3. K.W. was taken to Memorial Hermann Hospital, and a nurse, Lori Cummings, performed a medical forensic examination, in which she took photographs and swabs of several areas on K.W.'s body. K.W. had multiple contusions and abrasions, including a circular bruise on her right arm that K.W. said was a result of appellant biting her and a large bruise all the way around her neck, which K.W. told Cummings was from a wire hanger and a belt being placed around her neck. Diana Donley,

with the Houston Forensic Science Center, analyzed the samples recovered during K.W.'s medical exam and samples recovered from various objects found in appellant's car, including a washcloth, a belt, and a box cutter. Donley testified that appellant could not be excluded as a contributor to the DNA mixture obtained from a swab of K.W.'s arm, nor could he be excluded as a contributor to the DNA mixture obtained from a portion of a K.W.'s underwear.

ing with a white woman—later identified as K.W.—right behind him. Appellant did not look at the officers, but K.W., who looked distraught and as if she had been crying, made eye contact with the officers and then looked over at appellant with a "terrified look in her eyes." Officer Flores then detained appellant. The officers escorted appellant, who was "very upset about the situation" and was demanding to know what was happening, to Officer D. Chun's patrol car.[4] Officer Flores described appellant's behavior as "irate," and appellant screamed at K.W. not to speak with the officers and kicked the door and seat of the patrol car. Every time appellant would scream loud enough for K.W. to hear, "she would just automatically shut down." Officer Flores stated that K.W. had wounds around her neck and what appeared to be bite marks on her arm.

The jury ultimately found appellant guilty of both aggravated kidnapping and aggravated sexual assault. Appellant elected to have the trial court assess his punishment. At the punishment phase, appellant pleaded true to the allegations in an enhancement paragraph. Appellant stipulated that he had six prior convictions, and the trial court admitted the judgments for each of these convictions. Defense counsel did not call any witnesses or introduce any exhibits during the punishment phase. During argument, defense counsel primarily focused on K.W.'s life decisions and her choice to engage in prostitution. Defense counsel also mentioned that throughout the course of the case, he had spoken "at length" with appellant's mother and brother. The trial court assessed appellant's punishment at forty-five years' confinement for both offenses, to run concurrently.

Through his appointed appellate counsel, appellant moved for a new trial. In this motion, appellant argued that his trial counsel had rendered ineffective assistance. Appellant first argued that his trial counsel did not call any witnesses during the punishment phase "despite numerous family members and friends who could testify to mitigating circumstances regarding [appellant]—including his brother who was in the court room." Appellate counsel attached eight letters from appellant's siblings, other relatives, and close friends, all of whom spoke positively about appellant's character. Appellant also argued that he received ineffective assistance because his trial counsel refused to let him testify on his own behalf. Appellant attached letters from his family members, but he did not attach any affidavits from these family members, nor did he himself execute an affidavit. He also did not attach an affidavit from his trial counsel. The only evidentiary support for appellant's assertion that his trial counsel refused to permit him to testify despite his desire to testify was his brother's statement in his letter attached to the motion for new trial that trial counsel "refused to allow [appellant] to testify on his own behalf."

The trial court did not hold a hearing on appellant's motion for new trial, and the motion was overruled by operation of law. This appeal followed.

## Ineffective Assistance of Counsel

In his first issue, appellant contends that his trial counsel rendered ineffective assistance by failing to present any mitigating evidence during the punishment phase despite the availability of character witnesses to testify on his behalf.

---

4. Sergeant Li testified that appellant told him that he had just met K.W., that he was not her pimp, and that he had never had sex with her.

## A. Standard of Review

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Both prongs of *Strickland* apply to the punishment phase of a trial, and in assessing prejudice, we must determine whether there is a reasonable probability that the assessment of punishment "would have been less severe in the absence of counsel's deficient performance." *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness). In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63. Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

When, as here, an appellant raises an ineffective assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of the new-trial motion and review that decision for an abuse of discretion.

*Lopez v. State*, 462 S.W.3d 180, 185 (Tex. App.–Houston [1st Dist.] 2015, no pet.). We will reverse only if the decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the trial court's ruling. *Id.* A decision is arbitrary or unreasonable if no reasonable view of the record could support the trial court's ruling. *Id.*; see *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013).

### B. Failure to Present Mitigating Evidence

"The decision whether to present witnesses is largely a matter of trial strategy." *Lopez*, 462 S.W.3d at 185 (quoting *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd)). An attorney's decision not to present particular witnesses at the punishment stage "may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful to the defendant." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.–Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007). A defendant complaining about trial counsel's failure to call witnesses "must show the witnesses were available and that he would have benefitted from their testimony." *Cantu v. State*, 993 S.W.2d 712, 719 (Tex. App.–San Antonio 1999, pet. ref'd) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); see *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (per curiam).

During the punishment phase in this case, the only evidence introduced was the judgments from appellant's six prior convictions and his stipulation concerning these convictions. Defense counsel did not call any witnesses to testify on appellant's behalf. In his motion for new trial, appel-

late counsel attached eight letters from appellant's siblings, other family members, and friends. All of these individuals spoke positively about appellant, relating their good opinions of his character, indicating that these opinions persisted despite their knowledge of appellant's past criminal history, sharing stories about how appellant helped raise his siblings, and expressing disbelief that appellant could have committed the underlying offenses. Seven of these letters did not indicate whether the particular individual had been available or willing to testify at appellant's trial. Appellate counsel did not attach any affidavits from these individuals, and thus the record includes no sworn testimony concerning their availability to testify or the substance of their testimony had they been asked to testify. See *Ramirez*, 280 S.W.3d at 853; *Cantu*, 993 S.W.2d at 719.

Lloyd Robinson, appellant's older brother, indicated in his letter that he had been present every day of appellant's trial. He did not state that he had desired to testify on appellant's behalf but had been denied the opportunity by trial counsel. As far as appellant's character and background, Lloyd's letter stated only that appellant "has been [through] life's ups and downs[, but] he has always been helpful with the family when needed[,] and I assure you Judge, he is not and was not the person described on trial that September day after hearing the evidence and testimony from the complaining witness to the [j]ury and [o]thers." Lloyd did not elaborate on appellant's upbringing or circumstances. Like the other individuals who wrote letters on appellant's behalf, appellate counsel did not obtain an affidavit from Lloyd describing the substance of his testimony had he been asked to testify. We therefore conclude that appellant has not shown that he would have benefitted from Lloyd's tes-

timony. *See Ramirez*, 280 S.W.3d at 853; *Cantu*, 993 S.W.2d at 719.

Appellant cites the Fourteenth Court of Appeals' decision in *Milburn* as support for his contention that his trial counsel rendered ineffective assistance by failing to call any witnesses during the punishment phase. As the State notes, in *Milburn*, at the hearing on Milburn's motion for new trial, the parties stipulated on the record as to the testimony of twenty of Milburn's relatives and friends. 15 S.W.3d at 269. Milburn's fiancée also testified at the hearing that she was never contacted by Milburn's attorney, that she and Milburn had a daughter with severe medical problems, and that Milburn "was a good father and very active in raising their daughter." *Id.* Milburn's employer also testified that he had known Milburn for fifteen or sixteen years, that Milburn had worked for him part-time for over a year, that Milburn was an "outstanding" employee, and that he would have testified to such if Milburn's counsel had contacted him. *Id.* at 269–70. In *Milburn*, the new-trial record thus established not only that numerous witnesses were available to testify on Milburn's behalf, but also the substance of their testimony, which, according to our sister court, "would have provided some counterweight to evidence of bad character which was in fact received by the jury." *Id.* at 271. The record in this case, however, does not establish either of these elements. We therefore conclude that appellant has not established that his trial counsel rendered ineffective assistance by failing to call witnesses during the punishment phase of his trial.

We overrule appellant's first issue.

## Hearing on Motion for New Trial

In his second issue, appellant argues that the trial court erred by failing to hold a hearing on his motion for new trial.

Specifically, he argues that the motion raised matters not determinable from the trial record, including trial counsel's failure to call mitigation witnesses during the punishment phase and failure to allow appellant to testify on his own behalf.

 The purpose of a hearing on a motion for new trial is: (1) to decide whether the case shall be retried and (2) to prepare a record for presenting issues on appeal in the event the trial court denies the motion. *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) (quoting *State v. Gonzalez*, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993) (plurality op.)). A defendant does not have an absolute right to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). However, a trial court abuses its discretion in failing to hold a hearing if the motion and the accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.*; *Smith*, 286 S.W.3d at 340 ("If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing."). A motion for new trial must be supported by an affidavit that specifically sets out the factual basis for the claim. *Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 339 (stating that, as prerequisite to hearing when grounds in motion for new trial are based on matters not already in record, motion must be supported by affidavit, either from defendant or someone else); *Bahm v. State*, 219 S.W.3d 391, 395 (Tex. Crim. App. 2007) (stating that it is "judicial requirement" that motions for new trial be supported by affidavits when motion is based on matters not already part of record). "If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the

basis for the relief claimed, no hearing is required." *Hobbs*, 298 S.W.3d at 199.

Although a defendant need not plead a prima facie case in his motion for new trial, "he must at least allege sufficient facts that show reasonable grounds to demonstrate that he could prevail." *Id.* at 199–200. Before a defendant will be entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, "a defendant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith*, 286 S.W.3d at 340–41 (emphasis in original). We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Hobbs*, 298 S.W.3d at 200.

Appellant moved for a new trial and asserted ineffective assistance as a basis for granting a new trial. Although appellant supported his motion with letters from eight family members and friends, he did not attach any affidavits from any of these individuals setting out their availability to testify, their willingness to testify, the substance of their testimony, or defense counsel's efforts in investigating their testimony. Although Lloyd Robinson indicated in his letter that trial counsel "refused to allow [appellant] to testify on his own behalf," as we have already noted, appellate counsel did not provide an affidavit from Lloyd concerning this allegation or concerning any testimony that he may have given on appellant's behalf. Appellant did not himself execute an affidavit concerning any efforts that he may have made to obtain witnesses to provide mitigating evidence on his behalf at the punishment phase or concerning any discussions he may have had with trial counsel concerning mitigating witnesses and evidence.[5]

Because appellant did not support his motion for new trial with any affidavits specifically setting out the factual basis for his claims, he was not entitled to a hearing on his motion. *See Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 339; *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) (stating that Court has required " 'as a prerequisite to obtaining a hearing' and 'as a matter of pleading,' [that] motions for new trial be supported by affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack") (quoting *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985)). We therefore hold that the trial court did not abuse its discretion by failing to hold a hearing on appellant's motion for new trial.

---

5. We note that appellate counsel attached a verification to the motion for new trial in which she swore: "I have read the above and foregoing Motion for New Trial, and the factual allegations contained therein are true and correct to the best of my knowledge and as presented to me." This verification does not satisfy the requirement that the allegations in a motion for new trial be supported by affidavit. *See Alcott v. State*, 26 S.W.3d 1, 4–5 (Tex. App.–Waco 1999) (holding that counsel's verification, which stated, "I prepared the foregoing DEFENDANT'S MOTION FOR NEW TRIAL. I have personal knowledge of facts presented in this motion and they are true and correct," was not type of affidavit "that would specifically show the truth of the grounds asserted or that would show reasonable grounds for relief"), *aff'd on other grounds*, 51 S.W.3d 596 (Tex. Crim. App. 2001); *cf. Hobbs v. State*, 298 S.W.3d 193, 200 n.32 (Tex. Crim. App. 2009) (distinguishing *Alcott*, in which insufficient verification was signed by Alcott's counsel, and holding verification in *Hobbs* was sufficient because "appellant himself swore under oath to the truth of the facts set out in his motion [for new trial], facts that were within his personal knowledge").

## Court Costs

 In his third issue, appellant contends that the trial court erred by assessing court costs against him for both of his convictions in violation of Code of Criminal Procedure article 102.073.

 The Code of Criminal Procedure requires that judgments order criminal defendants to pay court costs. *See Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014); *Mendoza v. State*, 435 S.W.3d 343, 345 (Tex. App.–Houston [1st Dist.] 2014, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 42.16 (West 2006) ("If the punishment is any other than a fine, the judgment shall specify it, and order it enforced by the proper process. It shall also adjudge the costs against the defendant, and order the collection thereof as in other cases.").

Code of Criminal Procedure article 102.073, which became effective on September 1, 2015, provides:

(a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.

(b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

(c) This article does not apply to a single criminal action alleging only the commission of two or more offenses punishable by fine only.

Tex. Code Crim. Proc. Ann. art. 102.073 (West Supp. 2016). The Texas Legislature provided that "[t]he change in law made by this Act applies to a court cost or fee imposed on or after the effective date of this Act, regardless of whether the offense for which the cost or fee was imposed was committed before, on, or after that date." Act of May 30, 2015, 84th Leg., R.S., ch. 1160, § 2, 2015 Tex. Sess. Law Serv. 3924, 3924 (West) (codified at Tex. Code Crim. Proc. Ann. art. 102.073). In this case, costs were assessed against appellant on September 3, 2015, two days after the effective date of article 102.073. Article 102.073 therefore applies to appellant.

The trial court assessed $239 in court costs for the aggravated kidnapping offense and $659 in court costs for the aggravated sexual assault offense. The State agrees that the trial court erred by assessing court costs against appellant for both offenses. The parties disagree, however, concerning the remedy that this Court should impose. Appellant argues that article 102.073 is unclear about which amounts should be vacated when the trial court improperly assesses costs for multiple offenses arising out of the same criminal action and contends that, under the rule of lenity, the higher amount of costs should be vacated. The State argues that all of the costs assessed for the aggravated kidnapping offense are duplicative of costs assessed in the aggravated sexual assault offense but additional costs were imposed for the aggravated sexual assault offense, and, as a result, we should vacate the costs awarded for the aggravated kidnapping offense. We agree with the State.

Both bills of costs assessed the following identical costs and fees: $5 commitments, $5 release, $5 arrest without warrant/capias, $40 district clerk's fee, $5 security fee, $133 consolidated court cost, $4 jury reimbursement fee, $25 DC records preservation, $2 support of indigent defense, $6 support of judiciary fee, $4 court technology fee, and $5 electronic filing fee. This amount equals $239, the total amount of

costs assessed for the aggravated kidnapping offense. Article 102.073 provides that when a defendant is convicted of two or more offenses in a single criminal action, the trial court "may assess *each court cost or fee only once* against the defendant." TEX. CODE CRIM. PROC. ANN. art. 102.073(a) (emphasis added); *Williams v. State*, 495 S.W.3d 583, 590 (Tex. App.–Houston [1st Dist.] 2016, pet. granted). We agree with the parties that the trial court erred in assessing these costs against appellant for both offenses.

The bill of costs for the aggravated sexual assault offense imposed the following additional costs and fees: $145 summoning witness/mileage, $5 sheriff's jury fee, $20 jury fee, and $250 DNA testing fee. These fees were not assessed for the aggravated kidnapping offense, only the aggravated sexual assault offense. The additional costs and fees assessed against appellant for the aggravated sexual assault offense were assessed against him only once. These additional costs and fees were properly recoverable and properly assessed against appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 102.073(a); *Williams*, 495 S.W.3d at 590.

We therefore modify the judgment for appellant's aggravated kidnapping conviction, trial court cause number 1399190, to delete the award of costs. *See* TEX. R. APP. P. 43.2(b) ("The court of appeals may . . . modify the trial court's judgment and affirm it as modified."); *Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (holding, where trial court improperly included amounts in assessed court costs, that proper remedy was to reform judgment to delete improper fees).

We sustain appellant's third issue in part.

### Conclusion

We modify the judgment in trial court cause number 1399190, appellate cause number 01–15–00808–CR, to delete the award of court costs. We affirm this judgment as modified. We affirm the judgment in trial court cause number 1399192, appellate cause number 01–15–00809–CR.