**Opinion issued March 31, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-18-00139-CR

———————————————

## EX PARTE OSCAR MINJARE SANCHEZ, JR., Appellant

---

### On Appeal from the 176th District Court
### Harris County, Texas
### Trial Court Cause No. 1412036-A

---

### DISSENTING OPINION ON EN BANC RECONSIDERATION

This is a simple post-conviction habeas corpus case in which the appellant failed to carry his burden of showing ineffective assistance of counsel in the habeas court. I would affirm the judgment of the habeas court denying the writ. The En Banc Court, however, upends the long-established standard of proof of ineffective assistance and the almost totally deferential standard of review of findings of historical fact by a trial court, substitutes its own new standards, and reviews the

historical facts in the record de novo. It then declares it cannot tell whether appellant's counsel was constitutionally ineffective or not, and it remands the case to the habeas court for unspecified "further proceedings." I respectfully dissent.

Oscar Minjare Sanchez Jr. appeals from the denial of his post-conviction application for a writ of habeas corpus filed under Texas Code of Criminal Procedure article 11.072.[1] In his sole issue, Sanchez contends that his trial counsel rendered ineffective assistance by failing to call allegedly exculpatory witnesses who, according to Sanchez, were available to testify during the guilt-innocence phase of his trial for failure to stop and render aid and whose testimony, he claims, would have benefited him.

The original panel opinion in this case, issued December 20, 2018, unanimously affirmed the habeas court's denial of Sanchez's application. The En Banc Court disagrees.[2] It declares that the habeas court's findings of fact—which simply recite the pleadings filed in that court and historical facts from the record in the trial court—are not supported by the record. It rebalances and reweighs the

---

[1]     *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 2(b).

[2]     Sanchez moved for rehearing and en banc reconsideration of the Court's December 20, 2018 memorandum opinion and judgment in this case. *Ex parte Sanchez*, No. 01-18-00139-CR, 2018 WL 6684863 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet. h.) (mem. op., not designated for publication). Because two of the three members of the original panel were no longer on the Court, the motion for rehearing was overruled by operation of law pursuant to Texas Rule of Appellate Procedure 49.3. En banc reconsideration was then granted, the memorandum opinion was withdrawn, and the judgment was vacated. *See* TEX. R. APP. P. 49.7.

2

historical facts in the record from Sanchez's original trial without giving any deference to the original trial court's judgment, its necessarily implied findings of fact, or the habeas court's findings. It declares that it does not have enough evidence to determine whether Sanchez's trial counsel committed ineffective assistance by failing to call witnesses Sanchez claims were available to testify on his behalf and whose testimony Sanchez claims would have benefited him. And it reverses the judgment of the habeas court denying the writ and remands the case to that court for unspecified "proceedings consistent with this opinion."

The en banc opinion thus enshrines in the precedent of this Court errors in the application of both (1) the standard of appellate review of a trial court's findings of historical fact and (2) the standard of proof of constitutionally ineffective assistance of counsel. Because an en banc opinion establishes binding precedent for the Court, I urge review of this case by the Texas Court of Criminal Appeals.[3]

The historical background facts from the trial record, the habeas court's

---

[3] The en banc opinion satisfies the requirements for discretionary review set out in Texas Rule of Appellate Procedure 66.3, subsections (a), (c), (e), and (f). *See* Tex. R. App. P. 66.3 (listing considerations of Court of Criminal Appeals in deciding whether to grant discretionary review, including whether court of appeals' decision conflicts with another court of appeals' decision on same issue; whether court of appeals has decided important issue of state or federal law in way that conflicts with applicable decisions of Court of Criminal Appeals; whether justices of court of appeals have disagreed on material question of law necessary to decision; and whether court of appeals "has so far departed from the accepted and usual course of judicial proceedings . . . as to call for an exercise of the Court of Criminal Appeals' power of supervision").

findings of fact and conclusions of law, and the established standard of proof of ineffective assistance and standard of review of the findings of fact of a habeas court relevant to this case are set out below.

**Background**

## A.     Original Trial Proceedings

Sanchez was charged with failing to stop and render aid to Harris County Sheriff's Office Lieutenant Gaisile Goudeau after his truck hit her unmarked police car during a police chase, throwing it over the curb, through some railings, and into a parking lot, causing her severe injuries. The evidence at trial showed that on August 11, 2013, Sanchez was the designated driver for his four passengers on a night out celebrating a friend's birthday. After visiting two bars, where he drank two beers, Sanchez set out on Highway 249 in his F-250 pickup truck to drive Tomball Police Department Captain Richard Grassi, Sharleen Martin, Marion Lamal Oshman, and Bobby Joe Flores home.[4]

At the same time on the same stretch of Highway 249, Lieutenant Goudeau was monitoring a police chase. To allow a police cruiser to pass, Goudeau pulled her unmarked Chevy Impala into the right lane in front of Sanchez's truck. Sanchez swerved to the left to avoid colliding with Goudeau, but his truck struck her Impala

---

[4]     The following facts are as stated in this Court's prior opinion on direct appeal. *See Sanchez v. State*, No. 01-16-00293-CR, 2017 WL 1424949, at *1-2 (Tex. App.— Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication).

4

from behind, causing the violent crash that lifted Goudeau's car into the air, pushed it over the curb and through some rails, and spun it into the nearby parking lot. Sanchez did not stop. He continued driving his passengers home.

Sergeant K. Benoit, who was following the police chase, testified that he passed Lieutenant Goudeau's car several seconds before the crash, and that he saw in his rearview mirror a truck matching Sanchez's strike Lieutenant Goudeau's car, throwing it into the air, onto the curb, and into the parking lot. Benoit returned to the scene and saw that Goudeau had obvious injuries from the crash. He waited with Goudeau until she was transported to the hospital, where she stayed for four days after suffering severe injuries requiring three surgeries and months of rehabilitation.

Sanchez testified at trial. He admitted that while he was driving home from a bar with friends, he began following the police chase. One of his passengers, Captain Grassi, called the Tomball Police Department to report the chase. Sanchez saw Lieutenant Goudeau's car pull in front of his truck, but he claimed that he swerved out of the way in time to avoid a collision.

Harris County Sheriff's Office Deputy R. Musil was the lead investigator for the accident and the sole investigator on the crime scene. He took photographs of the scene and analyzed the Impala. He testified that the damage to the Impala was consistent with its having been hit by a larger, higher-sitting vehicle. He also stated that its license plate, found on the highway, had been knocked off by the force of the

5

initial impact from the larger vehicle. Musil also testified that he interviewed the eyewitnesses to the accident, including all four of Sanchez's passengers. Although the interviews were videotaped, the videotapes were not introduced into evidence. On cross-examination by Sanchez's counsel, Deputy Musil stated that the four eyewitnesses' interviews were consistent with each other and that they did not support the police's theory of the case.

Investigator A. Marines of the Harris County District Attorney's Office examined Sanchez's truck. He testified that he found "what [he] believed to be a gray metallic paint which matched the color of the vehicle driven by [Lieutenant Goudeau]" on the truck's front tow ring. He collected samples of the paint and submitted them for testing. Devin Stasicha, a forensic scientist with the Texas Department of Public Safety's Houston Regional Crime Lab, testified that the paint was consistent with paint fragments recovered from the rear bumper of Goudeau's Impala.

Investigator Marines further testified that he spoke with Sanchez and Captain Grassi at the Tomball Police Department the day after the accident. Both were cooperative and spoke with Marines voluntarily. Sanchez told Marines that he had not hit Goudeau's car.

Two days later, Investigator Marines asked Sanchez to return to the Tomball Police Department to make a statement, and Sanchez complied, providing a written

statement. On cross-examination, Marines testified that Sanchez's interview and statement were consistent with each other and were also consistent with Grassi's interview.

After eliciting the above-described information about the eyewitnesses' statements on cross-examination of Deputy Musil and Investigator Marines, Sanchez's attorney chose not to call any of Sanchez's passengers as witnesses. Instead, he argued at closing that the State had not called them as witnesses because their testimony would have conflicted with the State's theory that Sanchez caused the accident.

The jury convicted Sanchez of the third-degree felony offense of failure to stop and render aid. *See Sanchez v. State*, No. 01-16-00293-CR, 2017 WL 1424949, at *1 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication). The trial court assessed Sanchez's punishment at ten years' confinement but probated this sentence by placing him on community supervision for a period of ten years. *See id.* Sanchez did not file a motion for new trial. In 2017, this Court affirmed Sanchez's conviction, overruling the two issues he raised on appeal— whether the trial court erred in submitting a voluntary-intoxication charge to the jury and whether the evidence of his knowledge of the accident was insufficient. *See id.* The Court of Criminal Appeals refused Sanchez's petition for discretionary review and this Court's mandate issued on October 20, 2017.

7

**B.     Habeas Corpus Proceedings**

On December 12, 2017, Sanchez filed an application for a writ of habeas corpus under Texas Code of Criminal Procedure article 11.072, alleging only that his trial counsel had provided ineffective assistance by failing to call necessary exculpatory witnesses—Captain Grassi, Martin, and Flores—to testify. In support of his application, Sanchez obtained and attached affidavits from each of these three witnesses stating that they were passengers in his truck, they saw him swerve around the car that darted out in front of the truck, and they were not aware of a collision.

The habeas court denied Sanchez's application without an evidentiary hearing and certified that Sanchez had a right of appeal. We abated this appeal and remanded the case to the habeas court for findings of fact and conclusions of law mandated by article 11.072 section 7(a). *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a) (providing that unless applicant is "manifestly entitled to no relief," habeas court "shall enter a written order including findings of fact and conclusions of law").

The habeas court supplemented the appellate record with its findings of fact and conclusions of law, which included the following:

### FINDINGS OF FACT
. . . .

4.  In his sole ground for relief, the applicant alleges that he received the ineffective assistance of trial counsel. *Applicant's Writ* at 8–9.

8

5. The applicant claims trial counsel failed to present evidence from Captain Richard Grassi, Sharleen Martin, and Bobby Joe Flores during the applicant's trial. *Applicant's Writ* at 8–9.

6. The applicant claims that these witnesses would have testified that they were passengers in the applicant's vehicle and that they were not aware of the applicant's vehicle colliding with the complainant's vehicle. *Applicant's Writ* at 8–9.

7. The trial court finds that trial counsel did not call any witnesses in his case-in-chief during the guilt[/]innocence phase of the applicant's trial.

8. The trial court finds, based on the reporter's record, that trial counsel's cross[-]examination of Deputy Ryan Musil elicited testimony that Grassi, Martin, and Flores all made consistent statements to law enforcement about what happened. . . .

9. The trial court finds, based on the reporter's record, that trial counsel's cross[-]examination of Investigator Arturo Marines elicited testimony that the applicant and Grassi both made consistent statements to law enforcement about what happened.

10. The trial court finds, based on the reporter's record, that during closing trial counsel made the following argument: that "[t]here are four eyewitnesses in a car, Bobby Joe Flores, [Sharleen] Nichol Martin, Maria Lamal Oshman, Captain Rick Grassi . . . [the prosecutor] didn't call them" ; that the prosecutor failed to bring the jury "every piece of evidence" as she had promised; and that the prosecutor failed to do so because "it [did not] match her theory."

11. The trial court finds that the applicant fails to show that trial counsel was deficient.

12. The trial court finds that the applicant fails to establish a reasonable probability that the result of the proceeding would have been different had these witnesses been called to testify at the applicant's trial.

9

## CONCLUSIONS OF LAW

. . . .

3. The applicant fails to show that Grassi, Martin, and Flores were available and that their testimony would have benefited the defense. *See King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983); *[E]x parte Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012) (the applicant must still show that "some benefit" establishes a reasonable probability that the result of the proceeding would have been different, i.e., one sufficient to undermine confidence in the outcome).

. . . .

5. In all things, the applicant has failed to demonstrate that he was denied the effective assistance of counsel.

Accordingly, the instant application is **DENIED.**

After this Court reinstated the case and requested briefing, both Sanchez and the State filed briefs and Sanchez filed a reply. *See* TEX. R. APP. P. 31.1. The Court issued its opinion on December 18, 2018, affirming the habeas court's denial of the writ. Sanchez's motion for rehearing was denied by operation of law as two of the original panel members were no longer on the Court. *See* note 2 *supra.* The En Banc Court granted rehearing, withdrew the original opinion, vacated the judgment, and now issues its opinion. I dissent.

**Ineffective Assistance of Counsel**

In his sole issue, Sanchez claims that the habeas court abused its discretion in concluding that he failed to show that his trial counsel was constitutionally ineffective. He contends that he showed that Captain Grassi and Sharleen Martin

10

were available to testify, that their testimony would have benefited his defense,[5] and that, because they were not called as witnesses, his counsel's performance was deficient and probably caused a different result than would have been the case had they been called.

## A. Standard of Review in Habeas Corpus Proceedings

Appellate courts review a trial court's decision to grant or deny habeas corpus relief for an abuse of discretion. *See Ex parte Montano*, 451 S.W.3d 874, 877 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the evidence in the light most favorable to the trial court's ruling." *Id.* We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based upon an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Montano*, 451 S.W.3d at 877. And we afford the same amount of deference to the trial court's rulings on the application of law to fact if the resolution of ultimate questions turns on an evaluation of the witnesses' credibility and demeanor. *Guzman*, 955 S.W.2d at 89; *Sandifer v. State*, 233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When an issue is necessarily fact intensive, "a trial court's finding must be accepted on appeal unless

---

[5] On rehearing, Sanchez concedes that Flores's affidavit did not state that he was available to testify, so we need to analyze only the affidavits of Sharleen Martin and Captain Grassi.

11

it is clearly erroneous." *Montano*, 451 S.W.3d at 877. And "[w]hen there are no written findings explaining the factual basis for the trial court's ruling, we imply findings of fact that support the ruling so long as the evidence supports those implied findings." *Id.*

Appellate courts review the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or are based on affidavits or live testimony, provided they are supported by the record. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006); *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Appellate courts may treat findings mislabeled as conclusions of law as findings of fact. *See Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979)). We will uphold the habeas court's judgment so long as it is correct under any theory of law applicable to the case. *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

Here, the en banc opinion sets out the general standard of review in habeas proceedings. Slip Op. at 7–8. But it understates the Court of Criminal Appeals' long-standing holding that the intermediate appellate courts should afford "*almost total deference*" to the trial court's determination of historical facts and to the trial court's rulings on ultimate questions that turn on an evaluation of witnesses' credibility and

demeanor. *See Ex parte Guzman,* 955 S.W.2d at 89; *Ex parte Montano*, 451 S.W.3d at 877. And it misjudges who the finder of historical fact is in this post-conviction habeas corpus proceeding based on ineffective assistance at trial—namely, the original trial court in which Sanchez's counsel represented him, *not* the habeas court, whose findings merely reflect the trial record and Sanchez's pleadings in his habeas petition. Accordingly, stating that the habeas court was in no better position than this appellate court to determine the relevant historical facts, as the habeas judge was not the original trial judge, the En Banc Court deems itself free to review and reweigh de novo the historical facts relevant to Sanchez's trial counsel's representation of him. It does not defer at all to the original trial court's judgment on the verdict or the necessarily implied findings of historical fact by the jury that evaluated the demeanor and credibility of the witnesses at trial that support the judgment. It likewise affords no deference to the habeas court's findings of historical fact. It concludes that they are unsupported by the record, even though they merely recite the relevant historical facts from the trial record and set forth Sanchez's claims in his application for habeas corpus. Yet, prevailing standards of review require that the historical facts the jury found by evaluating the demeanor and credibility of the witnesses at trial and the habeas judge found by reading the record and acknowledging its contents and Sanchez's pleadings must be afforded almost total deference by the appellate court, not decided anew, as the En Banc Court does. *See, e.g.*, *Guzman*, 955 S.W.2d at 89.

13

The real question in this ineffective assistance of counsel inquiry is threefold: whether, taking the historical facts as established by the trial record and according those facts almost total deference, and viewing the record in the light most favorable to the trial court's and the habeas court's judgments, Sanchez established (1) that the witnesses he claims were necessary to his defense were available to testify at trial, (2) that their testimony would have benefited his defense, *and* (3) that no reasonable attorney could have employed a strategy under which they were *not* called, the questions to which I now turn.

## B.     Standard of Proof of Ineffective Assistance

To establish that trial counsel rendered constitutionally ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *see also Robinson v. State*, 514 S.W.3d 816, 823 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

Courts indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Strickland*, 466 U.S. at 689; *Williams*, 301 S.W.3d at 687; *see also Robinson*, 514 S.W.3d at 823. Appellate review is highly deferential to counsel, and courts do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002).

To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that his counsel's performance was not based on sound strategy. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (holding that record must affirmatively demonstrate alleged ineffectiveness). In the absence of evidence of counsel's reasons for the challenged conduct, courts will assume a strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constitutes deficient performance unless it was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

## C. Application of the Standard of Proof

### 1. *Performance Prong*

With respect to the first *Strickland* prong, performance of counsel, to demonstrate ineffectiveness of counsel based on an uncalled witness, an appellant

must show two things: (1) the witness would have been available to testify; and (2) the witness's testimony would have been of some benefit to the defense. *See Strickland*, 466 U.S. at 687; *Ex parte Ramirez*, 280 S.W.3d 848, 853–54 (Tex. Crim. App. 2007) (per curiam) (denying habeas relief based on argument that trial counsel was ineffective for failing to call witnesses where witness's statement was "not sworn or signed" and did "not state that she was available to testify at [defendant's] trial"); *White*, 160 S.W.3d at 52; *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Robinson*, 514 S.W.3d at 824. This may be established through either testimony on the record or, as here, affidavits from the uncalled witnesses; mere allegations in a motion or habeas petition are not sufficient to establish these factors. *See White*, 160 S.W.3d at 52–53 (rejecting ineffectiveness claim where applicant provided affidavit from uncalled witness but did not provide substance of testimony that showed benefit to applicant); *Robinson*, 514 S.W.3d at 824 (rejecting ineffectiveness claim where appellate counsel obtained letters from proposed witnesses but letters neither indicated their availability or willingness to testify at appellant's trial nor described substance of testimony had they been asked to testify).

Where the record is silent as to trial counsel's rationale in deciding not to call witnesses, we are directed to assume a strategic motivation if any can possibly be imagined, and only if none can be conceived may we conclude that the challenged conduct constitutes deficient performance. *See Ex parte Varelas*, 45 S.W.3d 627,

16

632 (Tex. Crim. App. 2001); *Garcia*, 57 S.W.3d at 440. This is particularly uncontroversial, as "[t]he decision whether to call a witness is clearly trial strategy and, as such, is a prerogative of trial counsel." *Brown v. State*, 866 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Like the habeas trial court, I would hold that Sanchez failed to make the required showing "that Grassi, Martin, and Flores were available and that their testimony would have benefited the defense." I would also hold that Sanchez failed to show that his trial counsel could have had no conceivable strategic motivation for failing to call Grassi and Martin; and, therefore, he failed to defeat the presumption that his trial counsel did not provide ineffective assistance.

### a. *Availability of the witnesses to testify*

A defendant who complains that his attorney was ineffective because he failed to call certain witnesses whose testimony would have benefited him must show that the uncalled witnesses were available to testify at his trial. *See Ramirez*, 280 S.W.3d at 853 (denying habeas relief based on ineffective assistance for failure to call witness whose statement did "not state that she was available to testify at [defendant's] trial"); *White*, 160 S.W.3d at 52; *King*, 649 S.W.2d at 44. Courts must afford almost total deference to the habeas court's findings that a habeas applicant, such as Sanchez, did not show by a preponderance of the evidence that the uncalled witnesses he seeks—here, Captain Grassi and Martin—were available to testify at

17

his trial, as long as the habeas court's findings are supported by the record. *See Wheeler*, 203 S.W.3d at 325–26. And they are.

Here, the record relied on by the habeas court included the reporter's record from trial and the affidavits of Captain Grassi and Martin. Captain Grassi's affidavit did not state anything about his availability to testify at Sanchez's trial. Martin's affidavit stated, "If I had been asked to testify at Mr. Sanchez's trial, I would have gladly done so." I would conclude, therefore, that the habeas court did not abuse its discretion in finding that Sanchez failed to show that Captain Grassi was available to testify at Sanchez's trial. *See Ramirez*, 280 S.W.3d at 853; *White*, 160 S.W.3d at 52; *King*, 649 S.W.2d at 44; *Robinson*, 514 S.W.3d at 824. Assuming without deciding that Martin's affidavit was sufficient to show her availability to testify, despite the habeas court's finding, and even assuming the same with respect to Captain Grassi, I would still conclude that Sanchez failed to show that the testimony of either Grassi or Martin would have benefited him, as is also required.

### b. Benefit of Grassi's and Martin's testimony

Even if Sanchez had shown that Captain Grassi and Martin were available to testify at his trial, in order to establish that his trial counsel was ineffective he still needed to show that he would have benefited from their testimony to satisfy the first prong of *Strickland*, requiring that the defendant show his counsel's performance was professionally deficient. *See Strickland*, 466 U.S. at 687; *Ramirez*, 280 S.W.3d

18

at 853. The habeas court found that Sanchez did not make that showing with respect to either witness. I agree.

The habeas court found that Sanchez's trial counsel elicited testimony on cross-examination of Deputy Musil and Investigator Marines that Captain Grassi, Martin, and Sanchez all made consistent statements to law enforcement about the accident, and then used this information in his closing argument as evidence that Sanchez did not hit Lieutenant Goudeau's car. That court also found that Sanchez's trial counsel argued that the prosecutor failed to bring Grassi's and Martin's testimony before the jury, despite promising to bring all evidence before them, and that the prosecutor did so because it did not match her theory.

> Specifically, the habeas court found that
>
> during closing trial counsel made the following argument: that "[t]here are four eyewitnesses in a car, Bobby Joe Flores, [Sharleen] Nichol Martin, Maria Lamal Oshman, Captain Rick Grassi . . . [the prosecutor] didn't call them;" that the prosecutor failed to bring the jury "every piece of evidence" as she had promised; and that the prosecutor failed to do so because "it [did not] match her theory."

This Court must afford total deference to these findings unless they are not supported by the record. *See Wheeler*, 203 S.W.3d at 325–26. Here, the historical facts found by the habeas court and necessarily implied by the jury's verdict and the original trial court's judgment are fully supported by the record.

In his affidavit submitted with Sanchez's habeas petition, Captain Grassi stated that on August 11, 2013, he was riding as a passenger in Sanchez's truck with

three other passengers when they observed a high-speed car chase conducted by the Harris County Sheriff's Office. Grassi contacted the Tomball Police Department—his employer—to report the chase and told Sanchez to follow it. An unmarked police car then cut directly in front of Sanchez's truck, forcing Sanchez to veer to the left to avoid striking the car. While Grassi "was not aware of having collided with the other vehicle," and did not see any visible damage to Sanchez's truck the next day, he concluded that Sanchez's "truck is a large, heavy-duty work truck, so it is possible there was a glancing strike to the other vehicle, but nobody in [Sanchez]'s vehicle showed any knowledge of having been in a collision[.]"

Martin's affidavit stated that "[o]n the night of August 11, 2013, my husband Bobby Flores, Rick Grassi and his girlfriend Mariam, Oscar Sanchez and [I] went out for Rick's birthday . . . at a pub playing shuffle board and then decided to go to Whiskey River." After leaving Whiskey River, "there was a high-speed chase on 249 going north" and "[Captain Grassi] asked [Sanchez] to follow the chase while he was on the phone with someone from his police station where he works." Martin's affidavit continued, "I was sitting behind [Sanchez] chatting with [Oshman] not really paying much attention to the road up ahead but did see a car up ahead on the left side of us," and then "[Sanchez] slams on his brakes and honks his horn, and swerves away from a car." Martin's affidavit concluded, "I did not observe any

20

collision between [Sanchez]'s truck and any car that night," and she averred that "[i]f we had been in a collision I would have noticed it."

While it is possible that the testimony these witnesses stated they would have provided may have had some benefit to Sanchez's defense, it is also equally possible, if not more likely than not, that calling Captain Grassi and Martin to testify would have harmed Sanchez's defense since it would have exposed them to cross-examination. It is undisputed that Sanchez was driving these witnesses home at night after they had visited two bars. On cross-examination, their testimony, demeanor, and credibility would have had to have been weighed against the testimony, demeanor, and credibility of Sergeant Benoit, who was following the police chase and saw and heard the accident, and the two investigating officers who gave evidence regarding the details of the accident and who took videotaped interviews of these witnesses and testified on the stand that they corroborated Sanchez's testimony but who were not asked further details. *See Castruita v. State*, No. 03-10-00419-CR, 2012 WL 2981105, at *3 (Tex. App.—Austin July 12, 2012, no pet.) (mem. op., not designated for publication) (testimony that "may have had some benefit" to defendant's defense was not shown to be beneficial where it was "also possible that the testimony would have harmed [defendant's] appellant's defense during cross-examination").

21

Based on its review of the facts from the trial records, the habeas court came to the conclusion that Sanchez failed to show that Grassi's and Martin's testimony would have benefited Sanchez. *See Ex parte Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012) ("[T]he applicant must still show that 'some benefit' establishes a reasonable probability that the result of the proceeding would have been different, i.e., one sufficient to undermine confidence in the outcome."). I agree.

Having concluded that Sanchez had failed to carry his burden of showing that the witnesses were available and that their testimony would have benefitted him, the habeas court did not reach the question whether any competent attorney could have failed to call these witnesses. I address it below.

### c. Counsel's trial strategy

As stated above, when, as here, the record is silent as to trial counsel's rationale in deciding not to call certain witnesses, we must assume a strategic motivation if any can possibly be imagined, and only if none can be conceived may we conclude that the challenged conduct constitutes deficient performance. *See Varelas*, 45 S.W.3d at 632. This is particularly uncontroversial here, as "[t]he decision whether to call a witness is clearly trial strategy and, as such, is a prerogative of trial counsel." *Brown*, 866 S.W.2d at 678. And it is not difficult to imagine a sound trial strategy here, where defense counsel's decision allowed him to advance his client's interests while avoiding prejudicing him.

22

The evidence that Captain Grassi's and Martin's affidavits stated they would have given—that neither was aware that Sanchez had hit Lieutenant Goudeau's car—was elicited on cross-examination of Deputy Musil and Inspector Marines, after which Sanchez's counsel asked no further questions. This enabled the defense to avoid subjecting Martin and Grassi to cross-examination while introducing evidence supporting Sanchez's testimony that he was unaware that there had been a collision. Cross-examination of these witnesses—Sanchez's friends, with whom he had been out at bars drinking just before the accident—might have shown intoxication or bias on the part of these witnesses, and it would have subjected their credibility to the scrutiny of the jury both through their demeanor on the witness stand and through the introduction into evidence of the videotapes of their interviews with Deputy Musil and through questioning of these witnesses as to their impaired state on the night of the accident.

The only reasonable inference from defense counsel's failure to call Martin and Grassi to the stand is that counsel made a professional judgment that calling these witnesses and opening the door to the videotapes of their interviews would have harmed Sanchez more than it would have benefited him. As it was, defense counsel was able to make the jury aware of their statements and their consistency with Sanchez's account of the accident and to bring that information again to the jury's attention in closing argument, to the benefit of his client, without prejudicing

23

his defense by opening the door to their cross-examination and the introduction of contravening evidence.

Moreover, Sanchez failed to explain how Captain Grassi's and Martin's testimony agreeing with him that they were unaware a collision had occurred would have benefited him, given both the overwhelming evidence of his guilt presented at trial and the risks presented by exposing these potential witnesses to cross-examination and to the introduction of the police videos of their statements, which Sanchez could have introduced into evidence himself had he thought them beneficial. Nor has Sanchez shown that it was not sound trial strategy for defense counsel to elicit testimony from the State's witnesses that these potential witnesses corroborated Sanchez's testimony while at the same time avoiding cross-examination and preserving the right to present the references to their testimony in a light favorable to Sanchez in closing argument.

I cannot rationally conclude that Sanchez has overcome the presumption that his trial counsel's decision not to call Martin and Captain Grassi to testify at trial constituted "sound trial strategy." *Strickland*, 466 U.S. at 689; *Williams*, 301 S.W.3d at 687. I would hold, therefore, that Sanchez did not meet his burden to prove by a preponderance of the evidence that his trial counsel was deficient. *See Thompson*, 9 S.W.3d at 813 (defendant bears burden of proof on both *Strickland* prongs, and failure to make either showing by a preponderance of the evidence defeats

ineffectiveness claim); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (same). Accordingly, I would affirm the judgment of the habeas court denying the writ.

The En Banc Court, however, does not even address this element of the proof of constitutionally deficient representation before coming to the conclusion that it cannot determine whether Sanchez's trial counsel was ineffective or not and, therefore, that it must remand the case to the habeas court for unspecified further proceedings in accordance with its opinion.

### 2. *Prejudice Prong*

The "appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams*, 301 S.W.3d at 687. Thus, because Sanchez failed to demonstrate that his trial counsel's performance was deficient, it is unnecessary to consider whether he was prejudiced by his counsel's performance at trial.

I would overrule Sanchez's sole issue.

### Conclusion

I would affirm the judgment of the trial court denying habeas relief. Because the en banc opinion is binding precedent on this Court and because, in my view, the en banc opinion contains fundamental errors of law with respect both to the standard of review of a habeas court's denial of a post-conviction petition for habeas corpus

and to the standard of proof of ineffective assistance of counsel and remands this case for further proceedings without any basis in law, I also urge the Court of Criminal Appeals to grant review, to reverse the judgment of the En Banc Court, and to reaffirm the almost totally deferential standard of review of a habeas court's and a trial court's findings of historical fact and the established standard of proof of ineffective assistance of counsel.


Evelyn V. Keyes
Justice


The En Banc Court consists of Chief Justice Radack and Justices Keyes, Lloyd, Kelly, Goodman, Landau, Hightower, and Countiss.

Justice Landau writing for the En Banc Court.

Justice Keyes, joined by Justice Lloyd, dissenting.

Chief Justice Radack dissenting without opinion.

Publish. TEX. R. APP. P. 47.2(b).