**Affirmed and Memorandum Majority and Memorandum Concurring Opinions filed March 12, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00500-CR

---

### DEAUNDRIC JAQUAY DORSEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1645467**

---

### MEMORANDUM MAJORITY OPINION

Appellant Deaundric Jaquay Dorsey appeals his conviction for compelling prostitution of a child under the age of eighteen (18) resulting in a forty (40) year prison sentence. In his sole issue, he complains his trial counsel was ineffective. In the absence of an evidentiary record about any investigative efforts made by counsel and his reasoning in a motion for new trial hearing or elsewhere, appellant relies on sworn items in the clerk's record. Though we consider such items as part

of the reviewable record in support of his complaint, these fragments of evidence are insufficient to support appellant's complaint. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2018, appellant was first indicted and arrested pursuant to an arrest warrant based on an investigator's affidavit stating that on or about March 28, 2019 appellant compelled the complainant, "Lenore"[1], to commit acts of prostitution in an area known as "The Blade" or "The Track" (a segment of Bissonnet St. in Houston), notorious for prostitution.

Appellant was first appointed counsel on May 17, 2018. In February 2019, appellant filed a pro se motion seeking new counsel, and the following month that counsel sought to withdraw. On April 2, 2019, the court appointed new counsel, James Smith. On June 19, 2019, appellant filed another pro se motion again seeking new counsel. In it appellant stated that

> in every "face-to-face" visit regarding Client Attorney that said Criminal Allegation, which defendant is currently being accused of; that he hate and dislike these particular cases on his case log and each of the individuals whom have should be subject to a cruel death.

Smith was never excused from the case and continued representing appellant. On September 6, 2019, the State filed an amended indictment for the felony offense of compelling prostitution of Lenore, a person under the age of eighteen years of age. Shortly thereafter, with trial set on September 16, 2019, and his recent receipt of certain records, Smith filed a motion to continue on behalf of appellant. Trial was reset, and on November 11, Smith filed a motion for a psychiatric examination after he spoke with appellant's mother about appellant's attempted suicide while appellant was in jail.

---

[1] In this opinion, we refer to the complainant, who was a minor at the time of the offense, to protect her privacy.

On December 3, 2021, prior to the start of trial the parties reported to the court the status of plea negotiations: that Smith asked for probation which the State rejected, and the State offered twenty years prison for three charges which appellant rejected. Jury selection followed, wherein the record shows that Smith was actively involved, both in questioning the panel members and objecting to certain questions asked by the State.

Lenore testified at trial that she had run away from home when she was sixteen (16). She spent some time at a friend's house and eventually planned to go to another friend's house. She testified that appellant offered her a ride to where she wanted to go, but instead took her to his own house.

Lenore testified that when they arrived at appellant's house, appellant told her she "wasn't going anywhere." Lenore testified that appellant took her to his bedroom, removed her clothes, pinned her against his bed, and raped her. Lenore testified that appellant made her clean his house and then earn money through prostitution. She explained he would drive her to the Blade and that she would perform sexual acts for payment from other men. Lenore testified that appellant forced her to stay at his house by physically assaulting her and threatening to kill her if she left. She explained how in this manner he coerced her to engage in prostitution by abusing her and threatening to kill her if she refused. Appellant did not leave her alone: when he left the home, another man with another prostitute would stay in the home. She testified that appellant called her a "stupid bitch," slapped her, punched her, kicked her, pulled her hair, and repeatedly sexually assaulted her.

After about ten days away from home, Lenore managed to escape and was able to make contact with her mother who picked her up.

Lenore's mother explained that she quickly secured Lenore in her car and

saw that Lenore had bruising all over her and blood under her nails, that she had visibly lost weight, and was crying. Lenore's mother learned that appellant had Lenore's wallet and identification, and where appellant lived. Mother testified that she drove with Lenore to appellant's house along with her son.

Lenore's mother testified that Lenore identified appellant when they reached his street as he was mowing his yard. As Lenore remained hidden, Lenore's mother approached appellant and demanded Lenore's belongings. Appellant first refused, denied knowledge of Lenore, but eventually, conceded that he threw her belongings in a nearby gas station trash can, and ultimately retrieved them for Lenore's mother as she followed. Lenore's mother testified that when she confronted appellant about Lenore's broken appearance, he responded, "I put my hands on her because she put her hands on me." Lenore's mother testified that she understood this to mean that appellant was "hitting" and "hurting" Lenore. Lenore's mother testified that she then took Lenore to the hospital and the police.

The sexual assault nurse, Alma Diaz, testified that Lenore had injuries to her vagina. Diaz (the first witness at trial) testified that Lenore had "two notches" on her hymen tissue and a large amount of yellow-colored discharge. Diaz explained that when a "notch" occurs, this means there was a tear on the hymen. Diaz testified these injuries are consistent with sexual assault, and that everything Lenore said during the sexual assault exam was consistent with Diaz's medical findings.

Smith cross-examined Diaz, who admitted that the injuries she saw could have happened six months to a year before the examination. Smith cross examined Lenore's mother about inconsistencies in her testimony about whether Lenore had left her phone at home or sold it to Geo. He cross-examined Lenore about the length of time she spent at her friend's house and the length of time she spent with

4

appellant.

A police officer from the Harris County Sheriff's Office, Sergeant Marty Kuehn, testified about the blind photo array procedure, and testified that that on April 13, 2018, Lenore came to the office. Kuehn testified that the array was presented in the ordinary manner and protocol was followed, and that Lenore identified appellant from the photo array as the person who compelled her to commit prostitution. Lenore also identified appellant in court as the perpetrator.

On December 8, 2021, the third day of trial, appellant did not appear in court that day or respond to messages. Smith requested a continuance, the court denied the request and trial resumed. The jury found appellant guilty of compelling prostitution by a person under age 18.

The same day, in appellant's absence (and over Smith's objection), the court proceeded to punishment. Both sides declined to offer an opening statement. The prosecutor offered all evidence admitted in the first phase of trial, Smith reasserted all objections to that evidence, and over those objections, the court admitted all of that evidence. The State called one witness, an officer through which the State offered appellant's penitentiary packet. Smith asserted hearsay objections and requested that various pages and items within the exhibit be redacted, posed one question to the officer on cross-examination to determine if he possessed qualifications to testify, and delivered a brief closing:

> Your Honor, I'm in a very difficult position. As Your Honor knows at this point in time my client is not in the courtroom with us. I would ask Your Honor to be as kind and judicial as you think -- that you possibly can. I would ask you not to completely throw the book at Mr. Dorsey. I would ask you to maybe consider, you know, something in terms of justice and balance with reason and common sense. I'm going to leave it up to Your Honor to make your decision. I'm going to ask you to please be lenient. Thank you.

5

The trial judge assessed punishment at 40 years confinement and entered judgment in absentia on December 8, 2021. The court subsequently withdrew the judgment until appellant resurfaced.

On June 1, 2022, appellant appeared in court with Smith, and the court formally pronounced his sentence. A judgment addendum amended the date of sentencing to June 1, 2022. Smith sought to withdraw, and on July 11, 2022, the trial court appointed the Harris County Public Defender's Office to represent appellant on appeal. In the meantime, on June 19, 2022, appellant executed a pro se notice of appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

At the start of his argument section appellant teases a full-scale challenge to all aspects of Smith's representation—in the investigation and pretrial phase ("did nothing to prepare for trial"), at trial during both phases ("expended minimal effort for his client during trial"), and post-trial, ("failed to preserve his client's right to appeal"). Although the State has treated it so, appellant's five-page argument section, however, is not a comprehensive challenge.[2] Liberally construing the

---

[2] In his fact section appellant criticizes various acts and omissions, stating that trial counsel:

Declined to make an opening statement.

Only conducted a brief cross-examination of the State's first witness, SANE nurse Alma Diaz, who examined the complainant.

Did not cross-examine the next witness, Harris County Sheriff's Deputy Todd McGinnis.

Declined to cross-examine the next witness, Harris County Sheriff's Sgt. Marty Kuehn.

He cross-examined the complainant, but did not object to the hearsay contained in her medical records from Texas Children's Hospital, which were admitted as State's Exhibit 1.

Did not call any witnesses for the defense during the merits phase of the trial.

Offered only a brief closing argument, wherein he told the jury the complainant was not credible; that another man, a friend of the complainant named Geo, was the person who compelled the complainant into prostitution, but offered no evidence to support this suggestion.

substance of appellant's argument, at most, he has sufficiently briefed two sub-complaints, or two failures of Smith. First, appellant complains that Smith failed to investigate, citing particularly Smith's failure "to hire an investigator to explore the history and background of the complainant", to inquire of appellant information "regarding his mental health history, work history, school history, or any other potential mitigation information," and failing to "ask anyone in Mr. Dorsey's family, or anyone else, about his life history, work history, mental health history, or any other background information that could have been presented to the jury on Mr. Dorsey's behalf." Appellant contends the result of these failures to investigate denied appellant "the right to effective cross-examination" and the opportunity to have other potential mitigation information. Second, though related to the first issue, appellant contends Smith's performance at the punishment hearing was ineffective as a result of his failure to investigate.

## A. Standard of Review

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (Supp.). This right necessarily includes the right to reasonably effective assistance of counsel.

---

Failed to offer any mitigation evidence during punishment.

During closing argument at punishment was limited to asking the judge for leniency, requesting that the judge "not to completely throw the book at Mr. Dorsey".

Most of these factual assertions are not included as complaints in appellant's argument. To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief the issue by providing supporting argument and appropriate citations to authorities and to the record. *Id.*; *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011). To the extent appellant did not include any of the listed complaints in his argument and failed to provide citations to the record or authority with respect to these events, has appellant waived them on appeal.

7

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Hart v. State*, 667 S.W.3d 774, 783 (Tex. Crim. App. 2023)("Under these

8

circumstances, wherein counsel has had no opportunity to explain his actions, we will assume a strategic motive, if one can be ascertained, and find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or, stated differently, if no reasonable trial strategy could justify counsel's actions.").

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though counsel's conscious decision not to, for example, object to evidence is not insulated from review, unless the defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

**B. Pretrial Investigation**

Under his sole complaint, appellant contends that his trial counsel did not conduct a reasonable pretrial investigation because counsel did not hire an investigator "to explore [Lenore's] history and background", research the law applicable to this case, investigate mitigating evidence, or investigate "any other background information that could have been presented to the jury…".

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 691). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a

heavy measure of deference to counsel's judgment." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* (quoting *Strickland*, 466 U.S. at 690).

A claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case requires a showing of what an investigation would have revealed that reasonably could have changed the result of the case. *Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd). Likewise, a claim for ineffective assistance based on trial counsel's failure to interview a witness requires a showing of what the interview would have revealed that reasonably could have changed the result of the case. *Id.*

Because no record was made in connection with an ineffective assistance claim in a motion for new trial, appellant asks us to look elsewhere for support of his claim that Smith failed to conduct a pretrial investigation. Appellant cites the lack of "out-of-court" hours listed on counsel's "Fee Expense Claim" and appellant's pretrial "Motion To Dismiss Court Appointed Attorney," which alleged that counsel took no action on this case.

*Fee Claim*

Following trial, Smith submitted a Fee Claim in which he sought compensation for time in court but sought no compensation for pre-trial investigation. Appellant argues that this proves that Smith did no investigation and thus was ineffective. Appellant argues that Smith's signed County Auditor's Forms ("40-1BV") dated December 28, 2021, titled "Attorney Fees Expenses District Court-Court Appearance" and the attached "40-1LV" indicating hours worked. The form includes the oath signed by Smith which states:

I swear or affirm that the Harris County Auditor may rely upon the information contained in this ATTORNEY FEES EXPENSE CLAIM to make payment according to the fee schedule adopted by the Board of District Judges Trying Criminal Cases pursuant to Tex. Code Crim. Part. 26.05. I further swear or affirm that I have not received nor will I receive anything of value for representing the accused, except as otherwise disclosed to the Court in writing.

Even if we presume the fee voucher is self-authenticating and we take judicial notice of the facts discernable from the form and Smith's entries, we decline to read into the fee claim facts not shown. The oath, which essentially has the purpose of ensuring attorneys do not claim *more* hours than actually worked (obtained payment from other sources), imposes no obligation to report any hours worked for which the attorney does not intend to claim compensation. Indeed, the record shows that Smith did indeed perform out-of-court work and yet sought no compensation.[3] In short, the fact that Smith did not list pre-trial work does not prove that no such work was done.

Other courts have declined to afford Fee Vouchers, under similar circumstances, to fill the void of a silent record in the absence of an evidentiary hearing on a motion for new trial. *See Matter of H.C.*, 562 S.W.3d 30, 45 (Tex. App.—Texarkana 2018, no pet.) (stating the court cannot assume that trial counsel failed to consult a psychologist, even when counsel's fee voucher did not list any hours for consulting with a psychologist); *see also Delgado v. State*, No. 01-07-00471-CR, 2008 WL 920490, at *5 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.) (mem. op., not designated for publication) (holding that defendant had not proven that defense counsel failed to adequately prepare for trial, even though counsel's fee voucher billed only "1.50" hours for trial preparation); *see also Scott v. State*, No. 07-13-00323-CR, 2015 WL 993247, at *5 (Tex. App.—Amarillo Mar.

---

[3] The record shows that Smith spoke to appellant's mother concerning appellant's attempted suicide, negotiated with the prosecutor and spoke with appellant prior to trial.

11

3, 2015, no pet.) (mem. op., not designated for publication) (finding trial counsel effective even though counsel's fee voucher failed to list any hours for trial preparation).

*Motion To Dismiss Court Appointed Attorney*

Appellant also emphasizes his motion to remove Smith from his case and looks to the motion and statements he made in the motion as proof to support his contention that Smith failed to conduct a pretrial investigation. The motion and statements within it were made four months after Smith had been appointed, but well over a year before trial.[4] Appellant contends that Smith essentially told him that he detested defending those accused of crimes like those he was accused of and that such defendants should be "subjected to a cruel death." Appellant further alleges that Smith told him he considered appellant guilty if the case continued. The statements appellant attributes to Smith are shameful and depart from ethical standards of legal representation.

However, we are reluctant to consider the motion, even if sworn, as evidence in the absence of a record of a hearing on the motion. *See Willis v. State*, No. 01-21-00438-CR, 2023 WL 3358431, at *8 (Tex. App.—Houston [1st Dist.] May 11, 2023, no pet.)(not designated for publication) (refusing to consider evidence

---

[4] From the record, it appears the trial court signed and granted the motion but that appellant's counsel was never removed from the case (though appellant's brief stated that the trial court "took no action" on the motion). The trial court did not specify on what basis it granted the motion and there is no evidence that a hearing was held to address the motion. The trial court does not appear to have made any factual findings regarding the contents of the motion. Appellant continued to appear in court with counsel as his attorney after the trial court signed appellant's motion. The Court Docket Sheet showed that appellant continued to appear with counsel representing him for pretrial settings. The record showed that appellant appeared at trial with counsel representing him, and for all post-trial settings. Appellant has not complained that the trial court erred by failing to substitute another attorney in the place of appellant's trial counsel.

attached to motion for new trial without hearing with submission of evidence during hearing) *citing Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984); *Burrus v. State*, 266 S.W.3d 107, 112 (Tex. App.—Fort Worth 2008, no pet.). There was no response, no hearing, no stipulation that these statements were said and no record of Smith's response.

Yet even if we consider the alleged statements as evidence of deficient representation, they are not probative as to the issue as to whether Smith failed to conduct a pretrial investigation in advance of trial. Moreover, again, even if we can consider the motion as evidence that Smith uttered statements of the nature described in the motion, nothing in the record indicates that Smith ever made them in front of the jury or judge or anyone during the first four months he represented appellant, or ever made them any time after those first four months. A complete review of the record of Smith's representation suggests that (even if the statements appellant attributes to Smith were said in one form or another) they were either not sentiments sincerely embraced by Smith during the course of his representation or feelings that Smith let interfere with his representation. The record shows that Smith expended efforts seeking to negotiate a plea deal—for appellant to receive probation instead of prison time. Though the State rejected the deal, it prompted the State to offer a plea deal for twenty years confinement. During jury selection, Smith spent a significant amount of time attempting to remove any jurors that had a bias or prejudice against a defendant charged with this kind of offense. Smith professionally defended appellant at trial, examining witnesses, asserting objections and participating. Smith requested the trial court show appellant leniency at punishment.

Even presuming that some statements were made to appellant in a face-to-face consultation, appellant has not shown that these alleged statements resulted in

any prejudice. *See e.g.*, *Aranda v. State*, 625 S.W.2d 8, 10 (Tex. App.—San Antonio 1981, no pet.) ("An examination of the entire record reflects that the appellant and his defense counsel had an abrasive relationship and that appellant expressed dissatisfaction more than one time. However, this ground, without more, is not enough to show ineffective assistance.").

Because neither the fee claim nor the motion to remove Smith add any significant proof to our consideration of Smith's investigation, the record remains substantially silent concerning whether he conducted such a pretrial investigation. Smith was not provided an opportunity to explain his pretrial investigation or lack thereof. *See Johnson*, 624 S.W.3d at 586; *Rylander*, 101 S.W.3d at 111. Because the record is silent concerning counsel's pretrial investigation, including his reasons for not contacting or calling specific witnesses at trial, we cannot conclude that counsel was deficient, or otherwise fell below the objective standard of reasonableness during this phase his representation. *See Johnson*, 624 S.W.3d at 586; *Ex parte Flores*, 387 S.W.3d at 633 (stating that defendant must overcome presumption that counsel's decision not to call witness is sound trial strategy).

## C. Punishment Phase Representation

We apply the same two-pronged test reviewing claims of ineffective assistance of counsel during the punishment phase. Under appellant's ineffective assistance complaint, he contends that at the punishment hearing, Smith "did no more than ask the judge for lenience." Appellant alleges, without a supporting record, that "[Smith] did not contact any family members or any other potential witnesses to testify as to Mr. Dorsey's character, work history, mental health history, or personal history. [Smith] did not contact any potential mitigation witnesses."

Defense counsel's "failure to uncover and present voluminous mitigating

14

evidence at sentencing is not a reasonable tactical decision where counsel has not 'fulfilled their obligation to conduct a thorough investigation of the defendant's background.'" *Ex parte Garza*, 620 S.W.3d 801, 824 (Tex. Crim. App. 2021) (quoting *Wiggins*, 539 U.S. at 522). "[C]ounsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful." *Lair v. State*, 265 S.W.3d 580, 595 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In assessing the reasonableness of an attorney's investigation, a court "must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Garza*, 620 S.W.3d at 824 (quoting *Wiggins*, 539 U.S. at 527). "When trial counsel does not conduct a complete investigation, his conduct is 'reasonable only to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Wiggins*, 539 U.S. at 533).

As discussed above, the record does not show whether Smith contacted any family members, any potential mitigation witnesses, or other potential witnesses. Likewise, the record is silent regarding why Smith did not offer mitigating evidence or call witnesses during punishment. Nor does the record show how appellant's absence from trial on the day of punishment impacted his strategy in handling the punishment.

To support his claim that Smith performed deficiently by not calling witnesses or presenting mitigating evidence in punishment appellant relies upon *Milburn v. State*, a case from our court. 15 S.W.3d 267, 269-70 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). *Milburn* is only similar to this case in that Milburn's trial counsel, like Smith, did not present mitigating evidence or call witnesses during the punishment phase of trial. However, *Milburn* is not similar to

15

this case, and exemplifies the significant procedural differences between a case such as this one, involving a virtually silent record, and one that is not silent, having an evidentiary trial record to support the ineffective assistance complaint. *Id.* In *Milburn*, a hearing on a motion for new trial was conducted and defendant's attorney testified that he did not interview witnesses, investigate available mitigating evidence in preparation for punishment or evaluate any available punishment evidence. *Id.* at 270. Twenty witnesses, appellants' relatives and friends, were available to testify on the defendant's behalf but counsel did not contact any of them. *Id.* The parties stipulated that the twenty witnesses would have testified they had known appellant for a long period of time, they were never contacted to testify by any member of appellant's defense team, they would have testified had they been requested to, and they would have asked the jury to consider the minimum punishment. *Id.*

In contrast, here, appellant has not shown that a single witness was available to testify on his behalf or what they would have testified about. Moreover, appellant has not provided any insight into what mitigating evidence trial counsel failed to present. *Robinson v. State*, 514 S.W.3d 816, 824-825 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (finding that appellant had not proven ineffective assistance because appellant did not show that witnesses were available to testify at trial nor did appellant show that he would have benefited from their testimony). The record of Smith's representation in the punishment hearing does not reveal any act or omission, alone or taken together, impervious to explanation of reasonable trial strategy; the mere fact that Smith did not call witnesses or present mitigating evidence at punishment does not establish ineffective assistance. *See e.g.*, *Humphrey v. State*, 501 S.W.3d 656, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (finding that trial counsel did not perform deficiently when

he failed to call witnesses or present mitigating evidence at punishment because the record did not demonstrate trial counsel put forth an insufficient investigative effort or that he lacked a thorough understanding of the available evidence). Smith's decision to not call witnesses, perform limited cross examination and limited argument could have been a part of a reasonable strategy to expedite the hearing to avoid prolonging attention to the fact of appellant's absence.

Under the applicable standard of review, the record does not show that Smith's actions fell below the objective standard of reasonableness during the punishment phase because nothing indicates that any witnesses were available, that appellant would have benefited from their testimony, that Smith failed to investigate mitigating evidence, or that Smith failed to interview available witness. *See id.*; *see also Robinson v. State*, 514 S.W.3d at 824-825.

## III. CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/     Randy Wilson
          Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J., concurring).

Do not publish — Tex. R. App. P. 47.2(b)